14 F.3d 596
 1994 Copr.L.Dec. P 27,186, 29 U.S.P.Q.2d 1913
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Arthur TAKEALL, Plaintiff-Appellant,
v.
PEPSICO, INC., Defendant-Appellee.
 No. 93-1237.
 United States Court of Appeals, Fourth Circuit.
 Dec. 8, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge.
 John Simon Lopatto, III, Claude W. Roxborough, Roxborough & Tillerson, Washington, D.C.
 Charles Daniel Ossola, Lowe, Price, LeBlanc & Becker, Alexandria, VA, Sharon G. Hyman, Hunton & Williams, Washington, D.C.
 D.Md.
 AFFIRMED.
 Before RUSSELL and NIEMEYER, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 This matter comes before the Court on appellant/plaintiff Takeall's appeal from the district court's order granting summary judgment in favor of defendant Pepsico on December 23, 1992. Takeall filed suit against Pepsico seeking damages for copyright infringement, "reverse confusion and passing off," breach of contract, unjust enrichment, and unfair competition. In the instant appeal, Takeall challenges as an abuse of discretion the district court's order regarding his copyright infringement claim and his state claims. Orders granting summary judgment are reviewed de novo, M & M Medical Supplies & Service, Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d 160, 163 (4th Cir.1993) and the standard of review is abuse of discretion. All findings of fact are reviewed under the clearly erroneous rule. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1526 (4th Cir.1984).
 
 
 2
 This case involves a dispute over conflicting claims to the phrase "You Got the Right One, Uh-Huh."
 
 
 3
 Appellant Takeall is an entertainer who performs a ventriloquist act with a dummy named "Scooter." Beginning in approximately 1970 and continuing until 1977, Takeall and "Scooter" made radio appearances on 25 radio stations in 12 states. In 1977, Takeall made the transition from radio disc jockey to stand-up performer, and from 1977 to 1983 he appeared as an entertainer in nightclubs and hotels in Las Vegas, Nevada.
 
 
 4
 In 1984, Takeall took his act to the New Orleans World's Fair. His arrival was preceded by a press release from the Fair stating that the audience would know they were in the correct pavilion when they heard the ventriloquist duo say "You Got the Right One, Uh-Huh."
 
 
 5
 Following the World's Fair, Takeall began working for the Department of Labor's Job Corp program serving the needs of under-privileged minority youth. Since 1984, Takeall has performed nearly exclusively at Job Corps centers across the country, where he has used his ventriloquism skills to convey an anti-drug message. With the exception of one performance on the Christian Broadcast Network's 700 Club, Takeall's performances beyond the Job Corps centers have been confined to schools, mostly at the elementary level.
 
 
 6
 Takeall's use of the term "Uh-Huh" as a part of his act began in the 1960's. Takeall testified in deposition that the phrase "You Got the Right One, Uh-Huh" became "official" as a part of his act in 1984. The earliest videotape of Takeall using the phrase was in December 1991.
 
 
 7
 On January 29, 1992, Takeall applied for a copyright registration, claiming a copyright in the "words and narration" of his act. Takeall stated on his application that his ventriloquist act was created in 1984.
 
 
 8
 In January 1991 Pepsico began airing Diet Pepsi commercials featuring a well-known entertainer, Ray Charles, singing "You Got the Right One, Baby, Uh-Huh." The advertisements followed a predecessor advertising campaign using the phrase "The Right One" as a "tag line" at the end of the commercials. The phrase"The Right One" was first proposed for consideration in a Diet Pepsi advertising campaign in late 1988. The first television commercial featuring the phrase "The Right One" appeared on the air on July 4, 1989. Pepsico's advertising agency experimented with different refrains for Ray Charles to use in "The Right One" commercial, including "Yeah, Yeah" and "Uh-Huh."
 
 
 9
 Takeall alleges three contacts with Pepsico in support of his contention that Pepsico had access to the phrase in which he claims copyright. First, Takeall alleges that he travelled to Albany, Georgia to deliver to Mr. Brady Keys a proposal requesting corporate sponsorship for a proposed "Say No To Drugs" tour. Mr. Keys is a franchisee of KFC Corporation, a wholly owned subsidiary of Pepsico. Takeall had no appointment with Keys, and in fact never met with Keys. Rather, Takeall delivered the "promotional package" to an unidentified person in Keys' office. The only document in the package containing the phrase at issue was the New Orleans World's Fair press release. Keys has denied ever receiving Takeall's alleged submission.
 
 
 10
 Keys has further stated that he never forwarded the package or communicated its contents to Pepsico or its advertising agency.
 
 
 11
 Second, Takeall alleges he sent a similar proposal for corporate sponsorship in early 1989 to Barry Johnson, former Director of Affirmative Action at Pizza Hut. Pizza Hut is also a wholly owned subsidiary of Pepsico. None of the materials in the package to Johnson contained the phrase "You Got the Right One, Uh-Huh." Johnson has stated that he has no recollection of ever receiving the materials from Takeall and believes that he did not forward to anyone at Pepsico or its advertising agency any correspondence from Takeall.
 
 
 12
 Finally, Takeall alleges that he mailed a promotional package and sponsorship proposal to Pepsi Baltimore on June 27, 1989. This mailing, Takeall asserts, was in response to a Pepsi advertisement in Black Enterprise magazine seeking applicants for Pepsi's Minority Business Enterprise Program. Two of the letters contained in the package mailed to Pepsi Baltimore contained reference to the phrase in dispute. Pepsico has challenged the authenticity of one of the letters containing the phrase. The advertisement requested that proposals be mailed to a specific Pepsi official. Takeall mailed his proposal to the marketing director at Pepsi Baltimore rather than to the individual identified in the advertisement. Pepsi has no record of having received Takeall's proposal.
 
 
 13
 On March 17, 1993, Takeall filed suit against Pepsico seeking damages for copyright infringement, "reverse confusion and passing off," as well as other state claims. In granting summary judgment in favor of defendant, the district court assumed the phrase's copyrightability and ruled on the basis of Takeall's failure to meet his threshold burden of showing "a reasonable possibility of access" by Pepsico to the property Takeall claims.
 
 
 14
 Summary judgment is properly granted to the moving party when the court determines that "no reasonable jury could find for the non-moving party on the evidence before it." Perini Corp. v. Perini Construction, Inc., 915 F.2d 121, 124 (4th Cir.1990), citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Any inferences from the underlying facts must be drawn in favor of the party opposing the motion, and when such inferences reveal a genuine dispute over a material fact summary judgment must be denied. Tuck v. Henkel Corp., 973 F.2d 371 (4th Cir.1992). A moving party is entitled to summary judgment where the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 15
 Takeall first argues in this appeal that the district court held him to an improper standard in concluding that Takeall had not demonstrated a triable issue of fact as to the possibility of access by Pepsico to his work.
 
 
 16
 To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 111 S.Ct. 1282, 1296 (1991). In addition, this Circuit has recognized that proof of copying can be established in one of two ways: direct evidence of copying by the defendant, or circumstantial evidence sufficient to create a presumption of copying. Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1065 (4th Cir.1988).
 
 
 17
 As a general matter, a plaintiff seeking to show copying through circumstantial evidence must establish a prima facie case with respect to two elements of his claim. First, a plaintiff must prove access to his work, or an opportunity to copy, by the alleged copier, and second, he must prove sufficient similarity between the two works to indicate that copying has in fact occurred. Id. at 1066.
 
 
 18
 Conceding that his is not a case of direct evidence, Takeall asserts that he established sufficient circumstantial evidence to create a triable issue on the question of access. Takeall argues that, as a matter of law, the greater the similarity between the disputed works, the less is the burden to show access. If a "striking similarity" between the two works is shown, Takeall contends, his burden of showing access is minimal, and copying can be inferred. Evans v. Wallace Berrie & Co., Inc., 681 F.Supp. 813 (S.D. Fla.1988). Takeall claims that although the district court assumed striking similarity, it incorrectly demanded greater proof of access than was required. Had the court considered Takeall's evidence in light of the lesser standard of proof in "striking similarity" cases, so Takeall contends, it could not have awarded summary judgment in favor of Pepsico.
 
 
 19
 Takeall relies virtually exclusively on Gaste v. Kaiserman, 863 F.2d 1061 (2d Cir.1988) in support of his argument that he is entitled to a lesser showing of access because of "striking similarity." In Gaste, the Second Circuit upheld a jury determination that defendants, composer and publisher of the well-known song"Feelings," had infringed the copyright in an earlier song of a different title. On appeal, defendants argued that the district court's instruction to the jury on striking similarity was a misstatement of the law. The court instructed the jury that "access ... [did] not have to be proven" if the plaintiff's work and the allegedly infringing work were "strikingly similar." Id. at 1063. The Court of Appeals upheld the lower court's instruction as a correct statement of the law.
 
 
 20
 Takeall argues that his case fits squarely within the "striking similarity" context. As such, he argues that the district court erred in requiring proof of a reasonable possibility of access.
 
 
 21
 Pepsico argues that, to the extent "striking similarity" is a viable doctrine, its application to this case is inappropriate. Pepsico asserts that, as applied by the courts, "striking similarity" is reserved for similarities of such breadth or of such an extraordinary nature that no explanation other than copying is plausible. See Selle v. Gibb, 741 F.2d 896, 901 (7th Cir.1984); Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 113 (5th Cir.1978). Pepsico argues that, while there may be a situation in which striking similarity would dispense with the need for further proof of access, courts are dubious that such a circumstance could ever arise.
 
 
 22
 [S]triking similarity is just one piece of circumstantial evidence tending to show access and must not be considered in isolation; it must be considered together with other types of circumstantial evidence relating to access ... Thus, although it has frequently been written that striking similarity alone can establish access, the decided cases suggest that this circumstance would be most unusual.
 
 
 23
 Selle at 901 (emphasis in original).
 
 
 24
 Further, Pepsico argues that Gaste cannot support Takeall's claim of relief from proving a reasonable possibility of access. Pepsico asserts that the Second Circuit in Gaste did not hold that a showing of striking similarity alone automatically precludes any further requirement that the plaintiff show a reasonable possibility of access. Also, Pepsico notes that the evidence before the district court in Gaste was in fact sufficient to demonstrate a reasonable possibility of access.
 
 
 25
 Finally, even though the district court in this case was willing to assume striking similarity, Pepsico argues that there is no striking similarity between the two works as a matter of law. Pepsico contends that the strikingly similar standard requires that works be virtually identical. Evans v. Wallace Berrie & Co., Inc., 681 F.Supp. 813, 818 (S.D. Fla.1988). The similarities between Takeall's ventriloquist act and Pepsi's television commercials, Pepsico argues, do not by any reasonable standard rise to this level.
 
 
 26
 The district court found that Takeall had submitted sufficient evidence from which a reasonable finder of fact could conceivably find striking similarity. Nonetheless, the court concluded that such evidence alone is not enough; rather, there must be some other circumstantial evidence establishing a reasonable possibility of access. Selle at 901. In effect, Takeall invites this Court to adopt a per se rule regarding the elimination of the need for proof of access in cases involving "striking similarity." Even assuming, as did the district court, that this is a case of striking similarity, in our view, such a per se rule is inadvisable and unsupported by law. The Second Circuit in Gaste recognized the limitations of the inference raised by striking similarity.
 
 
 27
 Though striking similarity alone can raise an inference of copying, that inference must be reasonable in light of all the evidence. A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole does not preclude any reasonable possibility of independent creation.
 
 
 28
 Gaste at 1068.
 
 
 29
 Here, even under the reduced standard in Gaste, we conclude that the district court did not abuse its discretion in requiring of Takeall a showing of reasonable possibility of access despite the assumption of striking similarity.
 
 
 30
 Takeall contends that his public appearances since 1968 raise a triable issue as to a determination of access to his work through wide dissemination. In support of this contention, Takeall points to his appearance on 26 radio stations between 1970 and 1984. Takeall also argues that his appearances in 1970 and 1972 on two New York City area stations while the creators of the Pepsi jingle were living in the New York area suggest wide dissemination and access.
 
 
 31
 Pepsico correctly argues that, while there may be authority to support a finding of access through wide dissemination of a plaintiff's work, the cases that have found dissemination wide enough to infer access have done so on the basis of a far stronger record. Pepsico asserts that the district court's finding that Takeall's work was not disseminated to such an extent that access by Pepsi's advertising professionals could be presumed should not be disturbed. Pepsico adds that the mere presence of the creators of the Diet Pepsi commercials in the New York area some twenty years prior to the Ray Charles commercial but approximately coincident with two performances there by Takeall cannot reasonably support an inference of access through dissemination.
 
 
 32
 Courts have found that wide dissemination can be the basis for an inference of access. See, e.g., ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988 (2d Cir.1983) ("He's So Fine" was the number one best seller in America for five weeks, and was one of the "Top Thirty" songs in England for seven weeks); Cholvin v. B. & F. Music Co., 253 F.2d 102 (7th Cir.1958) (plaintiff's work sold over 2,000 copies of sheet music, 200,000 records, and was broadcast nationally on several occasions).
 
 
 33
 The district court based its determination that there was insufficient evidence to support an inference of access through dissemination on its finding that Takeall's performances were principally confined to Job Centers and schools. The Court found that there was "absolutely no evidence" that the creators of the Diet Pepsi commercials had any access to these or other performances.
 
 
 34
 We hold that the district court's finding of insufficient evidence to show dissemination was not clearly erroneous and must be sustained. At bottom, the district court had before it unsupported claims that "millions" of listeners heard Takeall's performances "on a daily basis." Moreover, there was no evidence before the district judge to show that Takeall at any time used the disputed phrase during these performances. Notwithstanding the fact that evidence of the whereabouts of the creators of the Diet Pepsi commercials was not before the district court, their presence alone is not enough for a fact finder to infer access. See Intersong-USA v. CBS, Inc., 757 F.Supp. 274 (S.D.N.Y.1991) (radio broadcasts of plaintiff's song in New York or Miami while composers of allegedly infringing song were there held insufficient to infer that they heard the song).
 
 
 35
 Takeall further argues that his contacts with Pepsico subsidiaries and, in particular, with Pepsi Baltimore created a triable issue on the question of access. Takeall asserts that in responding to Pepsi's solicitation to the minority community in a June 1989 Black Enterprise magazine advertisement, he sent Pepsi a package containing video tapes of his act and two handwritten letters containing the phrase "You Got the Right One, Uh-Huh." Relying upon the presumption under Maryland law that a letter mailed is deemed received, he contends that the receipt of his submission by Pepsi employees in Baltimore was in itself enough evidence of access to create a genuine factual issue. McFerren v. Gold-Smith Stern Co., 113 A. 107, 109, 137 Md. 573 (1921).
 
 
 36
 Pepsico correctly notes that, regardless of the paucity of evidence showing Pepsi actually received Takeall's package, Takeall's contention that a letter mailed is deemed received is an incorrect statement of the law. Under the "corporate receipt doctrine," Pepsico points out that it is necessary to show "physical propinquity" between the receiving employee and other employees whereby "the latter has the opportunity to view the work in the possession of the former." 3 M. Nimmer & D. Nimmer, Nimmer on Copyright Sec. 13.02[A], p. 13-17.
 
 
 37
 Pepsico asserts that the alleged copiers are not employees of Pepsi, but rather outside advertising professionals. As such, a plaintiff can establish the possibility of access only "where there is a 'relationship linking the intermediary [here an employee of Pepsi Baltimore] and the alleged copier.' " Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 942 (8th Cir.1992), quoting Meta-Film Assoc., Inc. v. MCA, Inc., 586 F.Supp. 1346, 1357 (C.D. Cal.1984). In Meta-Film, the court established that the "key feature" of proof of access through an intermediary is a "close relationship linking the intermediary and the alleged copier." Meta-Film at 1357. Pepsico argues that in this case the record shows no evidence of any relationship between Pepsi Baltimore and the creators of the Diet Pepsi commercials. Thus, even if the receipt by employees of Pepsi Baltimore of Takeall's proposal were presumed, it would not be enough to establish a reasonable possibility of access to Takeall's work by the alleged copiers.
 
 
 38
 The district court found that Takeall's three alleged proposals to Pepsi subsidiaries and Pepsi Baltimore were insufficient evidence of a reasonable possibility of access to his work by the creators of the Diet Pepsi commercials--a finding that we will not disturb. The record reflects no evidence before the trial court establishing access on the part of the alleged copiers. Further, the district court was not willing to place Takeall's pure speculation as to access before the deposition testimony establishing that no Pepsi Baltimore employee knew of or forwarded Takeall's correspondence.
 
 
 39
 Takeall argues that the district court improperly discounted the testimony of Dr. Eugene Secunda. Dr. Secunda testified that Takeall's conduct in responding to the June 1989 Pepsi advertisement was reasonable and foreseeable by Pepsi. Dr. Secunda also stated that, given the tendency in the advertising profession of ideas to "percolate up" to the creative personnel, Mr. Takeall's submission to Pepsi Baltimore provided Pepsico with access to Takeall's material.
 
 
 40
 Takeall maintains that, once a witness has been qualified as an expert, the court cannot regulate the factors the expert uses or the mental processes by which the expert arrives at conclusions. These matters, according to Takeall, can be challenged only by cross examination. Girson v. United States, 88 F.2d 358 (9th Cir.1937). In addition, he asserts that the expert's testimony was admissible under Federal Rule of Evidence 702.
 
 
 41
 We hold that the district court was not obliged to afford Takeall the opportunity to present Secunda's theory concerning access to a jury, in light of its lack of any factual basis. Pepsico correctly notes that Takeall, as the party opposing the motion, bore the burden of producing competent evidence of a genuine, triable issue of material fact on the question of access. See Celotex at 322-23. Pepsico correctly points out that Secunda admitted that "I have no facts to substantiate that," referring to the percolation up theory. Further, Pepsico argues that Secunda acknowledged that "I don't know what the particular kind of relationships existed between the creative people at[Pepsi's advertising agency] and the marketing department at Pepsi."
 
 
 42
 We find that the district court properly concluded that Secunda's testimony could not raise a material fact with respect to access.
 
 
 43
 The district court reasonably discounted Takeall's expert testimony on the "percolation up" theory, noting that Dr. Secunda's testimony rested "not on any expert analysis of data, any specific fact, or any particular experience, but simply on his own conjecture." Such an unsupported theory would not have been of any help in deciding the issue. "[An] affidavit lacking facts does not satisfy the requirements of Fed.R.Civ.P. 56(e)." M & M Medical Supplies and Service, Inc. v. Pleasant Valley Hospital, Inc., 981 F.2d, 160, 166 (4th Cir.1993). Here, the district court found that the expert's deposition lacked facts and was not sufficient to satisfy Rule 56 requirements.
 
 
 44
 Takeall claims that his alleged submission of his"protected work" to Pepsi constituted the extra element necessary to avoid pre-emption. He further contends that the evidence of his mailing of a proposal to Pepsi Baltimore created an implied-in-fact contract.
 
 
 45
 Pepsico, with whom we agree as to this, argues that this claim represents a clear case for pre-emption. Here, Pepsico asserts, the rights sought to be vindicated are equivalent to any right encompassed by copyright. Accordingly, federal pre-emption of state claims is mandatory. 17 U.S.C. Sec. 301. See Kakizaki v. Riedel, 811 F.Supp. 129, 133 (S.D.N.Y.1992). Also, Takeall failed to establish an evidentiary basis for his state claims regarding any of the elements required by Maryland law for an implied-in-fact contract.
 
 
 46
 The district court's ruling against Takeall on his state claims was premised on the same finding of insufficient evidence that resulted in the court's disposition of his copyright claims. Concluding that Takeall's state law claims were unsupported by the record, we find no error in such a conclusion. Further, there is no evidence to suggest that the conduct of the parties manifested mutual assent necessary for an implied-in-fact contract. As with Takeall's copyright claims, it cannot be said that the district court erred in its finding of insufficient evidence.
 
 
 47
 Finally, Pepsico argues that, if this Court were to conclude, as we do not, that summary judgment on access grounds was improperly granted, it should proceed to resolve the question whether the phrase is protectable rather than remand the issue to the district court. Pepsico contends that material sought to be protected must be independently created and must possess "at least some minimal degree of creativity." Feist at 1287. In addition, even if a work as a whole is copyrightable, copyright protection does not extend to its component parts that are not. See Apple Computer, Inc. v. Microsoft Corp., 799 F.Supp. 1006, 1020 (N.D. Cal.1992). We are of the view that the disputed phrase fails to evince the requisite degree of originality to entitle it to copyright protection and is a short expression of the sort that courts have uniformly held uncopyrightable. See Narrell v. Freeman, 872 F.2d 907, 911 (9th Cir.1989); Alberto-Cluver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir.1971). See also 37 C.F.R. Sec. 202.1(a) (1992) ("short phrases such as names, title and slogans" are not subject to copyright). Finding no error in the trial court's holdings, we affirm.
 
 AFFIRMED
 NIEMEYER, Circuit Judge, dissenting:
 
 48
 Plaintiff's case is a thinly supported one and in the end may not be sustainable. But, on the record before us now, it cannot, I believe, be disposed of as a matter of law.
 
 
 49
 Arthur Takeall was concededly the first to use the phrase at issue, "You've got the right one, uh-huh," and he used it with the same voice inflections that are used in the allegedly infringing Pepsi commercial. Moreover, he used it very publicly on the radio and on television. It is noteworthy that as early as 1984 his act at the New Orleans Worlds Fair was promoted in circulars identifying Takeall with the phrase, "You've got the right one, uh-huh."
 
 
 50
 Whether Pepsico copied Takeall's phrase when it used the identical phrase in its well-known Pepsi commercials featuring Ray Charles is a closer question. Takeall was able to present no evidence that Pepsico did copy Takeall's phrase. But he did present circumstantial evidence from which Pepsico's access to the phrase can be inferred and that evidence cannot be ignored in the context of a summary judgment motion. For example, Takeall presented evidence that his use of the phrase was publicized through radio and television over a number of years. It was also publicized in a large number of live performances in various other contexts. From this evidence, a factfinder might properly conclude that a large audience, comprising perhaps millions, became familiar with his self-identifying phrase.
 
 
 51
 In addition to the general publicity, Takeall also presented evidence that he sent the phrase directly to Pepsico in Baltimore for consideration in its promotions, in response to Pepsi's own minority business solicitation campaign. He also sent the phrase to two of Pepsico's subsidiaries. While the receipt of the letters and use of them by Pepsico are disputed vigorously by Pepsico, the denial does not eviscerate the evidence presented by Takeall.
 
 
 52
 Finally, Takeall presented evidence from an expert witness knowledgeable about the advertising industry who explained how ideas in organizations "percolate up" to reach creative personnel, particularly when corporations are involved in advertising.
 
 
 53
 When reviewing the record on a motion for summary judgment, we are obliged to afford the plaintiff the full benefit of all inferences that may fairly be drawn from the circumstantial evidence, and the reach of these inferences is in this case, I submit, a factual question for the trier of fact.
 
 
 54
 While the majority points to testimony of witnesses on behalf of Takeall who had to acknowledge that they had no direct knowledge that Pepsico knew of or copied Takeall's phrase, that observation fails to take into account the inferences that may be drawn from the other evidence Takeall presented. The majority dismisses the circumstantial evidence and inferences to be drawn from it as "pure speculation." Nonetheless, placing the line between where reasonable inferences from circumstantial evidence end and where speculation begins is a function for the factfinder.
 
 
 55
 Finally, I cannot fail to observe that the majority's very discussion in reviewing the district court's opinion betrays the improper role undertaken by the district court and ours. On page 9 of the majority opinion, it is stated, "We hold that the district court's finding of insufficient evidence to show dissemination was not clearly erroneous and must be sustained."
 
 
 56
 While Takeall's burden of proof to show that Pepsico copied his phrase may prove to be insurmountable in the end, in my judgment, he presented enough at this stage of the proceedings to create a factual issue. I would reverse the judgment of the district court and, therefore, I respectfully dissent.