**Louis GASTE and Les Editions Louis Gaste, Plaintiffs–Appellees,**

v.

**Morris KAISERMAN a/k/a Morris Albert, and Fermata International Melodies, Inc., Defendants–Appellants.**

Nos. 92, 93, Dockets 88–7367, 88–7369.

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1988.

Decided Dec. 1, 1988.

Robert C. Osterberg, New York City (Abeles Clark and Osterberg, New York City, on the brief), for defendant-appellant Kaiserman.

Richard I. Wolff, New York City, for defendant-appellant Fermata International Melodies, Inc.

Donald S. Zakarin, New York City, (Andrew H. Bart, Pryor, Cashman, Sherman & Flynn, New York City, on the brief), for plaintiffs-appellees.

Before KAUFMAN, NEWMAN, and GARTH,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal involves a copyright infringement action against the composer and publisher of the highly successful popular song "Feelings," brought by Louis Gaste, the composer of an obscure French song written nearly 17 years earlier. The appeal is from a judgment of the District Court for the Southern District of New York (William C. Conner, Judge), entered after a jury found defendants Morris Kaiserman and Fermata International Melodies, Inc. ("Fermata") liable for copyright infringement. The jury awarded damages of $268,000 against Fermata and $233,000 against Kaiserman. The District Court also issued a permanent injunction against further infringement. Judge Conner reduced the damages against Kaiserman to $135,140 after excluding profits attributable to foreign performances. Judge Conner denied defendants' motions for a judgment notwithstanding the verdict or a new trial.

Defendants appeal from Judge Conner's denial of a new trial or judgment notwithstanding the verdict on several grounds. They argue that: (1) plaintiff did not have a valid copyright as a matter of law; (2) plaintiff failed to prove copying as a matter of law; (3) the District Court incorrectly instructed the jury on the issues of "access" and "striking similarity"; and (4) the District Court erred in not reducing the damages award to account for a portion of the profits from "Feelings" attributable to defendants' independent, non-infringing contributions. For the reasons stated below, we reject appellants' arguments and affirm the judgment.

## Background

In 1956, plaintiff-appellee Gaste, a resident and citizen of France, composed the music to a song entitled "Pour Toi" as part of the score of a motion picture *Le Feu aux Poudres,* which was released in France that same year.[1] Gaste registered the sheet music for the song in the United States Copyright Office in 1957. Neither the movie nor the song, which was published and recorded separately in France, had great success. Worldwide revenues of "Pour Toi" have amounted to less than $15,000.

From France, the scene shifts to Brazil, nearly two decades later. In 1973, the then unheralded and relatively unknown Brazilian singer and composer Morris Kaiserman, known professionally as Morris Albert, composed and recorded the song "Feelings." "Feelings" became a smash hit internationally, winning "gold records" in a number of countries.

Gaste contended at trial that Kaiserman had gained access to Gaste's virtually unknown song through Enrique Lebendiger, the owner of Fermata, which was Kaiserman's publisher. Gaste's evidence, detailed below in the discussion of access, established that Fermata had had some dealings with Gaste's publishing company, Les Editions Louis Gaste, in the 1950s.

---

* The Honorable Leonard I. Garth of the Third Circuit, sitting by designation.

1. Gaste did not compose the lyrics to "Pour Toi." His infringement suit involves only the music to the song.

### Discussion

## I. Validity of the Copyright

A. *Attachment of Notice.* Defendants-appellants Kaiserman and Fermata contend that as a matter of law Gaste did not have a valid United States copyright in the song "Pour Toi." Their principal argument is that the song was first published in 1956 in the movie *Le Feu aux Poudres* and that the movie lacked the formal copyright notice required by the United States Copyright Act of 1909, the statute then in force. As a result, they argue, this first publication of the song put it in the public domain, and the registration of the song at the United States Copyright Office in 1957, and the copyright renewal in 1984, were therefore invalid.

In order for Kaiserman and Fermata to prevail on this argument, we would have to hold that (1) publication of a work abroad without the attached notice required by the United States placed the work in the public domain under the 1909 Act, even if the publication was in a country that subscribed to the Berne Convention,[2] which does not require attachment of notice to secure copyright protection; (2) publication abroad of a movie with a song on its soundtrack constituted divestive publication of the song under the 1909 Act and the Universal Copyright Convention, even though Article VI of the Convention provided that divestive publication must be in a form that can be read or *visually* perceived; and (3) the writer of a song who licensed a filmmaker to use the song in a movie could lose the right to copyright the song if, with no showing of fault on the part of the song writer, the film-maker neglected to attach the appropriate notice to the movie.

We note in passing that there is authority contrary to the premises of appellants' argument on the Berne Convention issue, *see Heim v. Universal Pictures Co.*, 154 F.2d 480, 486–87 (2d Cir.1946) (dictum); 2 M. & D. Nimmer, *Nimmer on Copyright* § 7.12[D][2][a] (1988); the non-visual publication issue, *see* 1 M. & D. Nimmer, *supra*, § 4.05[B][3]; *cf. Rosette v. Rainbo Record Manufacturing Corp.*, 354 F.Supp. 1183 (S.D.N.Y.1973), *aff'd*, 546 F.2d 461 (2d Cir. 1976); and the licensee issue, *see Modern Aids, Inc. v. R.H. Macy & Co.*, 264 F.2d 93 (2d Cir.1959). But we need not, and do not, reach any of these issues because we hold that Gaste's certificate of copyright registration created a presumption of validity that the jury was entitled to conclude was not rebutted.

Gaste registered his song with the United States Copyright Office in 1957 and renewed the registration in 1984. Under section 410(c) of the current Copyright Act of 1976, 17 U.S.C. § 410(c) (1982), copyright registration made within five years of first publication of a work constitutes prima facie evidence of the validity of the copyright in any judicial proceeding. It is well settled that this puts the burden of proof as to invalidity on the defendant in an infringement action. *See Oboler v. Goldin*, 714 F.2d 211, 212 (2d Cir.1983); 3 M. & D. Nimmer, *supra*, § 12.11.

Less settled, however, is whether the 1909 Act created the same presumption of validity. Unlike the 1976 Act, section 209 of the 1909 Act does not say that the certificate of registration shall constitute prima facie evidence of validity of the copyright. It says only that the certificate shall be prima facie evidence "of the facts stated therein." Generally, the only "facts" stated in a certificate of registration are registration, deposit, and date of publication (where copyright is claimed in a published work).

■ Thus, by its terms, the 1909 Act does not expressly create a presumption of validity. Nonetheless, a number of courts, including this Circuit, have interpreted the 1909 Act as creating a presumption of validity and of compliance with statutory formalities such as initial publication with copyright notice. *See, e.g., Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 n. 1 (2d Cir.1977); *Stuff v. E.C.*

---

**2.** The only proof at trial as to distribution of the movie indicated that the movie was shown in France and Brazil. Both nations are signatories of the Berne Convention. The United States was not a signatory of the Berne Convention at the times relevant to this litigation.

*Publications, Inc.,* 342 F.2d 143, 144 (2d Cir.), *cert. denied,* 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68 (1965); *Monogram Models, Inc. v. Industro Motive Corp.,* 448 F.2d 284, 286 (6th Cir.1971); *Tennessee Fabricating Co. v. Moultrie Manufacturing Co.,* 421 F.2d 279, 282 (5th Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed. 2d 91 (1970); *Champion Map Corp. v. Twin Printing Co.,* 350 F.Supp. 1332, 1334–35 (E.D.N.C.1971); *Irving J. Dorfman Co. v. Borlan Industries, Inc.,* 309 F.Supp. 21, 24 (S.D.N.Y.1969).

Despite some authority to the contrary, *see Krafft v. Cohen,* 117 F.2d 579, 581 (3d Cir.1941); 3 M. & D. Nimmer, *supra,* § 12.11[B], we follow the majority rule and hold that under section 209 of the 1909 Act, a valid certificate of registration creates a rebuttable presumption of compliance with the requirements for validity, including the statutory requirement of initial publication with notice.

The legislative history of section 410 of the 1976 Act, although obviously not controlling our interpretation of the 1909 Act, is nonetheless illuminating. The House Report on the 1976 Act says that by expressly creating a presumption of *validity* for registered copyrights, Congress was not creating a new law, but was following a "sound" principle that had "been established in a long line of court decisions." H.R.Rep. 1476, 94th Cong., 2d Sess., 156–57 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5773. As the House Report states:

> It is true that, unlike a patent claim, a claim to copyright is not examined for basic validity before a certificate is issued. On the other hand, endowing a copyright claimant who has obtained a certificate with a rebuttable presumption of the validity of the copyright does not deprive the defendant in an infringement suit of any rights; it merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effec-

tively challenging them, shifts the burden of doing so to the plaintiff.

*Id.*

Although the statutory formalities of the 1909 Act were generally stricter and less forgiving than the corresponding provisions of the 1976 Act, we believe that the reasoning of the 1976 House Report is applicable nonetheless. Unless a defendant can produce evidence that the plaintiff did not comply with statutory formalities and that the defendant therefore had reason to believe the plaintiff's work was in the public domain, there is no reason to put the burden on the holder of a copyright certificate to prove the validity of that copyright.

■ Applying this presumption of validity to this case, we find that Kaiserman and Fermata did not, as a matter of law, overcome the presumption of validity accorded Gaste's registered copyright in the sheet music to "Pour Toi." Their evidence did not establish clearly whether the first publication of "Pour Toi" was in the movie *Le Feu aux Poudres* or as sheet music. But even accepting their contention that the first publication was in the movie, we conclude that their proof still fails. The defendants failed to prove that the film was distributed without proper copyright notice. A videotape of a library copy of the film that did not have a copyright notice attached was introduced in evidence by Gaste for other purposes. But there was no showing by Kaiserman and Fermata that this reflected the condition of the film as it was distributed commercially. Judge Conner was correct to instruct the jury that Gaste's certificate of registration was prima facie evidence that his copyright was valid, and the jury was entitled to find that the defendants did not successfully rebut this presumption.

B. *Originality.* Kaiserman and Fermata contend that Gaste's copyright could not have been valid because "Pour Toi" was not sufficiently original to be accorded copyright protection. Specifically, they point to similarities between "Pour Toi" and "Artistry in Rhythm," a prior composition by jazz great Stan Kenton.

■ It is well established that the originality requirement for obtaining a copyright is an extremely low threshold, unlike the novelty requirement for securing a patent. Originality for copyright purposes amounts to " '... little more than a prohibition of actual copying.' No matter how poor the 'author's' addition, it is enough if it be his own." *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 103 (2d Cir.1951) (citation omitted). Although slavish copying involving no artistic skill whatsoever does not qualify, *see Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980); *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.) (in banc), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), a showing of virtually any independent creativity will do.

Here, even an untrained ear can tell from the tapes introduced in evidence that while certain musical phrases in "Pour Toi" are similar to Kenton's "Artistry in Rhythm," the two are by no means identical. Moreover, Gaste's expert witness testified that the two tunes were not substantially similar. We also note that on the issue of originality, as compared to the issue of compliance with statutory formalities, it is even clearer that copyright registration created a presumption of validity under the 1909 Act. *See* 3 M. & D. Nimmer, *supra*, § 12.11[A]. On the evidence presented by both sides, we cannot say as a matter of law that Gaste's "Pour Toi" was not original enough to be accorded copyright protection.

## II. Copying

■ Appellants next attack the jury's conclusion that they copied Gaste's work. Because copiers are rarely caught red-handed, copying has traditionally been proven circumstantially by proof of access and substantial similarity. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir.1977). Appellants argue that there was insufficient evidence for the jury to find access directly or to infer it from striking similarity.

■ A. *Access.* Kaiserman and Fermata argue that Gaste's proof of access was too remote and speculative to have sustained a reasonable finding of access.

The guiding principle in deciding whether to overturn a jury verdict for insufficiency of evidence is " 'whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.' " *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 167 (2d Cir.1980) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). In the context of copyright, it is well established that there must be evidence of a reasonable possibility of access. Access must be more than a bare possibility and may not be inferred through speculation or conjecture. *See Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978); 3 M. & D. Nimmer, *supra*, § 13.02[A], at 13–12.

■ In this case, Gaste's principal theory of access was that Fermata's owner, Lebendiger, received a copy of "Pour Toi" in the 1950s, when Gaste was trying to market the song to subpublishers, and that Kaiserman obtained it from Lebendiger in 1973. Georges Henon, a former employee of Gaste who had been responsible for distributing materials to foreign subpublishers, testified that he gave a recording of "Pour Toi" to Lebendiger in France in the 1950s and that he sent copies of the sheet music and record to Lebendiger in Brazil.

Lebendiger testified that he never heard or saw copies of "Pour Toi" prior to the litigation. Defendants also presented several witnesses, including Kaiserman, in an effort to establish that Kaiserman composed "Feelings" in September 1973 and that he had had no contact with Lebendiger's publishing company before that date. The credibility of both this testimony and these witnesses' prior affidavits was significantly undercut, however, when Gaste introduced a contract between Kaiserman and Editora Augusta Ltda., a publishing company owned in part by Lebendiger; the contract was dated July 1, 1973, and Kaiserman's signature was notarized on July

11, 1973. The initial contract for "Feelings" was not signed until May 10, 1974.

■ Although Gaste's theory of access relies on a somewhat attenuated chain of events extending over a long period of time and distance, we cannot say as a matter of law that the jury could not reasonably conclude that Kaiserman had access to the song through Lebendiger. Access through third parties connected to both a plaintiff and a defendant may be sufficient to prove a defendant's access to a plaintiff's work. *See De Acosta v. Brown*, 146 F.2d 408, 410 (2d Cir.1944), *cert. denied*, 325 U.S. 862, 65 S.Ct. 1197, 89 L.Ed.1983 (1945). The lapse of time between the original publication of "Pour Toi" and the alleged infringement and the distance between the locations of the two events may make copying less likely but not an unreasonable conclusion. Indeed, a copier may be more likely to plagiarize an obscure song from the distant past and a faraway land than a recent well-known hit.

Kaiserman and Gaste also challenge the District Court's instructions to the jury on the issue of access. Appellants asked for an instruction that would have told the jury it could not base its findings on mere speculation or conjecture. The District Judge declined to give such an instruction, saying he did not want the jurors to think they could not draw inferences from the evidence. Judge Conner did tell the jurors several times, however, that they could find access only if Kaiserman had a "reasonable opportunity" to see or hear "Pour Toi."

We find no error in Judge Conner's instruction. Requiring a finding of a "reasonable opportunity" for access adequately states the appropriate standard. It might have been helpful for the District Court to have added that, although the jurors could draw inferences from the evidence presented, they could not find access on the basis of mere conjecture or surmise. But we do not find that the omission of such a caution rendered the charge misleading or permitted the jury to apply an incorrect standard.

B. *Striking Similarity.* Appellants argue that the District Court incorrectly permitted the jury to find copying on the basis of "striking similarity." As with access, appellants again challenge both the District Court's instruction and the sufficiency of the evidence.

Judge Conner instructed the jury that if a copyrighted work and an allegedly infringing work are strikingly similar, "then access does not have to be proven."[3] Appellants, relying principally on *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir.1984), argue that even where there is striking similarity, there must be at least some other evidence that would establish a "reasonable possibility" that the plaintiff's work was available to the alleged infringer.

In this Circuit, the test for proof of access in cases of striking similarity is less rigorous. In *Arnstein v. Porter*, 154 F.2d

---

**3.** The District Court's full instruction on striking similarity was as follows:

Now, there is one circumstance in which access does not have to be proven. If the two works, that is the copyrighted work and the allegedly infringing work, are what we call strikingly similar, then access does not have to be proven.

By striking similarity what we mean is that the two songs are so much alike that the only reasonable explanation for such a great degree of similarity is that the later song was copied from the first. In other words, if they are so nearly alike that it is virtually inconceivable that the second was independently composed without knowledge of the first, then you may find that there is infringement without finding actual access.

In other words, you are in effect presuming access from the fact of striking similarity.

So what you will have to decide is whether or not the songs are so much alike that it is virtually inconceivable that Feelings was independently composed without any derivation from Pour Toi.

That issue as to whether the two works are strikingly similar in the sense that I have defined, in other words, so as to preclude any reasonable possibility of independent creation, is an issue which is to be determined by you on the basis of all of the evidence, including the expert testimony.

Judge Conner also instructed the jury that independent creation of a copyrighted song was not infringement because there is no copying and that there is no infringement if the similarities between two songs are the result of the use of common musical sources or techniques.

464 (2d Cir.1946), Judge Frank said, "In some cases, the similarities between the plaintiff's and defendant's work are so extensive and striking as, *without more,* both to justify an inference of copying and to prove improper appropriation." *Id.* at 468–69 (emphasis added); *see also Ferguson v. National Broadcasting Co., supra,* 584 F.2d at 113 ("If the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access."); 3 M. & D. Nimmer, *supra,* § 13.02[B], at 13–17 (criticizing the *Selle* requirement that there be a "reasonable possibility" of access—not just a "bare possibility"—even in cases of striking similarity).

■ Appellants contend that undue reliance on striking similarity to show access precludes protection for the author who independently creates a similar work. However, the jury is only *permitted* to infer access from striking similarity; it need not do so. Though striking similarity alone can raise an inference of copying, that inference must be reasonable in light of all the evidence. A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole does not preclude any reasonable possibility of independent creation. *See Arnstein v. Porter, supra,* 154 F.2d at 468 ("If evidence of access is absent, the similarities must be so striking as to preclude the possibility that plaintiff and defendant independently arrived at the same result."); *Ferguson v. National Broadcasting Co., supra,* 584 F.2d at 113.

Thus, we find Judge Conner's instruction, taken as a whole, a correct statement of the law. Judge Conner said the issue was whether the plaintiff's proof "preclude[d] any reasonable possibility of independent creation" of the allegedly infringing work, and he instructed the jury to make its determination "on the basis of all of the evidence."

■ We also conclude that there was sufficient evidence to permit the jury to infer access based on striking similarity. Gaste's proof of striking similarity consisted of both aural renditions of the songs and expert testimony. Gaste's expert testified not merely to common musical phrases in the songs but said that "there is not one measure of 'Feelings' which ... cannot be traced back to something which occurs in 'Pour Toi.'" He also pointed to a unique musical "fingerprint"—an "evaded resolution" [4]—that occurred in the same place in the two songs. The witness said that while modulation from a minor key to its relative major was very common, he had never seen this particular method of modulation in any other compositions.[5]

Appellants' expert criticized the analytical methods of Gaste's expert and disagreed with his conclusions. But these criticisms go to the weight of the evidence, which, along with the credibility of the witnesses, was for the jury to determine.

■ In assessing this evidence, we are mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music. *See Arnstein v. Edward B. Marks Music Corp.,* 82 F.2d 275, 277 (2d Cir.1936). Thus, striking similarity between pieces of popular music must extend beyond themes that could have been derived from a common source

---

4. As explained by Gaste's expert, in most compositions, a dominant seventh chord "resolves" or leads into the major or minor chord four tones up. Thus, a B seventh chord would resolve to E minor or major. But in "Pour Toi" and "Feelings," this normal resolution is "evaded." The dominant seventh chord leads to a different key. In "Pour Toi," a B seventh chord resolves to C, in the key of G major. In "Feelings," an E dominant seventh chord, which would normally resolve to an A chord, resolves to C, again in the key of G major.

5. It is axiomatic that copyright protects only an author's expression, not his ideas. Drawing the line between ideas and expression, however, is not always easy, particularly in musical works. The "evaded resolution" described by Gaste's expert is arguably more a musical idea than expression. But the evaded resolution was identically placed in the two songs, and this sequencing of the technique could properly be considered expression.

or themes that are so trite as to be likely to reappear in many compositions. *See Selle v. Gibb, supra,* 741 F.2d at 905.

In their defense, Kaiserman and Fermata presented examples of prior art—by composers ranging from Bach and Schumann to Stan Kenton—to demonstrate that some of the similarities between "Feelings" and "Pour Toi" also appear in other works. But Gaste's expert analyzed these other works and testified that they were not substantially similar. In his opinion, similarity of themes in these works could not explain the extensive similarities between "Feelings" and "Pour Toi." He testified that he did not believe it would be possible to compose "Feelings" without copying from "Pour Toi." The dispute was properly left to the jury.

### III. Damages

Finally, Fermata objects to the damages award of $268,000.[6] Fermata argues that the award, which is based on its revenues from "Feelings" in the United States, should be reduced to account for the amount of the song's success attributable to the lyrics, independent of the infringing music. Fermata also argues that it is entitled to a reduction for the costs incurred in producing and distributing "Feelings."

We note preliminarily that the jury apparently made some apportionment of profits to account for the contribution of the lyrics and for the expenses incurred by Fermata. The parties agreed that Fermata's gross revenues from "Feelings" for the relevant time period were, in round numbers, $337,000. Although the record is not entirely clear on Kaiserman's revenue, the relevant figure appears to be $265,000.[7]

The jury found damages in the amount of $268,000 against Fermata and $233,000 against Kaiserman. Thus, the jury awarded Gaste approximately 80 percent of Fermata's gross revenues from "Feelings," and 88 percent of Kaiserman's revenues.

The District Court instructed the jury that if it made an apportionment for the lyrics, that apportionment would apply equally to Fermata and to Kaiserman. The jury was also told that only Fermata was entitled to reductions to cover the costs it incurred. Therefore, although we cannot be certain of the jury's reasoning absent a special verdict, it seems likely that the jury made a 12 percent reduction for both defendants to account for the lyrics and then made a further reduction of 8 percent for Fermata to account for its costs. With that in mind, we take Fermata's argument to be that the jury did not apportion enough and did not recognize enough of Fermata's costs.

A. *Lyrics.* A successful copyright plaintiff is entitled to recover only those profits that are "attributable to the infringement." 17 U.S.C. § 504(b) (1982). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* An infringing defendant is entitled to an apportionment of profits to account for his independent contributions only when "the evidence is sufficient to provide a fair basis of division so as to give the copyright proprietor all the profits that can be deemed to have resulted from the use of what belonged to him." *Sheldon v. Metro–Goldwyn Pic-*

---

**6.** Kaiserman also raised the issue of the damages award against him in his reply brief and purported to adopt Fermata's original brief by reference. But if a party fails to raise an issue on appeal in its initial brief, the issue is waived, unless it would result in substantial injustice. *See NLRB v. Star Color Plate Service,* 843 F.2d 1507, 1510 n. 3 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 81, 102 L.Ed.2d 58 (1988); *NLRB v. Local Union No. 46, Metallic Lathers,* 727 F.2d 234, 238 (2d Cir.1984). Adoption of an issue in a reply brief is not sufficient to present the issue under Fed.R.App.P. 28(a)(2). *Amoco Overseas*

*Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 653 n. 3 (2d Cir.1979). Kaiserman therefore has waived the damages issue. Because we reject Fermata's argument on this issue, however, Kaiserman's failure to properly join the argument is of no consequence.

**7.** The figures for Kaiserman presented to the jury included royalties from foreign performances, which the District Court later excluded from the damages award.

*tures Corp.,* 309 U.S. 390, 402, 60 S.Ct. 681, 685, 84 L.Ed. 825 (1940). Confronted with imprecision in the computation of expenses, a court should err on the side of guaranteeing the plaintiff a full recovery, but want of precision is not a ground for denying apportionment altogether. *Sygma Photo News, Inc. v. High Society Magazine, Inc.,* 778 F.2d 89, 95 (2d Cir.1985).

■ There was no dispute at the trial that Kaiserman wrote the lyrics to "Feelings," and that those lyrics were noninfringing. Fermata and Kaiserman argued to the jury that as much as 80 percent of the income from the song should be attributed to the lyrics.

The evidence on the value of the lyrics was decidedly mixed. Kaiserman's expert, Lou Levy, a retired music publisher, testified that while there was no set rule, the normal practice in the record industry when the lyrics and music to a song are written by different artists is to split the royalties 50/50. He said a well-known lyricist or composer could draw a larger share and that a "bad" lyricist might get as little as 15 percent. Levy testified that he "loved" the song "Feelings" and that he believed the title and lyrics were "far better" than the music itself. Nonetheless, he was unable to recall the words to the song on the stand and yet was able to sing the opening tune. He also said that the music and the words were inseparable and refused to estimate any percentage division.

Defendants also argued at trial that the lyrics must have had some effect because "Pour Toi" had virtually no commercial success, while "Feelings" was a smash hit. On the other hand, there was also evidence that "Dis Lui," a French version of "Feelings" with completely different words, also had considerable success. This could indicate either that the French words were also popular or that it was the music that gave the song its appeal.

We note that in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 508 F.Supp. 798 (S.D.N.Y.1981), *modified,* 722 F.2d 988 (2d Cir.1983), the District Court determined that three-fourths of the income of the infringing song "My Sweet Lord" was due to the music plagiarized from an earlier hit song, "He's So Fine." The Court deducted 25 percent for the defendant's contribution of the lyrics to "My Sweet Lord" and for the marketability added to the song by the fact that the defendant was former Beatle George Harrison.

Judge Conner, contrasting this case to *ABKCO* and declining to alter the jury's damage award, noted that Kaiserman, a virtual unknown before "Feelings," did not independently add the selling power of a Harrison. On the other hand, Fermata points out that the music to "Pour Toi" did not have the independently confirmed selling power of the music to "He's So Fine," which had been a No. 1 song in its own right.

We find no grounds to reject the jury's decision to apportion no more than 12 percent for the lyrics. As Judge Owen noted in *ABKCO,* "this is not an area susceptible to precise measurement." 508 F.Supp. at 801. The jury had an opportunity to judge for itself the independent appeal of the lyrics and the music. The evidence of the varied success of the three songs with the same music—"Feelings," "Pour Toi," and "Dis Lui"—could reasonably have been interpreted as favoring either side. Given this mix of evidence, we cannot say that the jury's decision to rank the lyrics of "Feelings" at the low end of the scale was so unreasonable as to require reversal.

■ B. *Fermata's Costs.* As noted above, the jury appears to have subtracted approximately 8 percent from Fermata's revenues to account for Fermata's costs related to "Feelings," in addition to the 12 percent deduction for the lyrics. Fermata argues that the jury's verdict was contrary to the evidence. The company claims to have proved various costs that should have reduced the award to zero.

Again, we decline to overturn the jury's verdict. The burden is on the infringer to prove his costs. We note that Fermata's evidence of its costs was sorely lacking in documentation. Such documentary evidence is uniquely within the province of a defendant to produce. When a defendant

infringer's own failure to keep records results in uncertainty, all doubt must be resolved in favor of the plaintiff. *Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265 F.2d 263, 272–73 (2d Cir.1959). The jury here did not act unreasonably in rejecting estimates of costs that were not fully documented.

We also reject Fermata's contention that nearly 90 percent of its costs must be attributed to "Feelings" because "Feelings" brought in nearly 90 percent of the company's revenues. In a very similar case, we held that " '[o]verhead' which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases." *Wilkie v. Santly Bros., Inc.*, 139 F.2d 264, 265 (2d Cir.1943), *cert. denied*, 322 U.S. 740, 64 S.Ct. 1058, 88 L.Ed. 1574 (1944) (citation omitted). In *Wilkie,* a music publisher found liable for infringement also sought to attribute nearly all of his costs to the infringing song because it was by far his biggest seller. The Court found no reason not to allocate the costs equally across all 47 songs the publisher published, because it was shown that the better selling songs were not more responsible for the overhead costs than the others.

Here, Fermata published some 200 songs in addition to "Feelings." It was Fermata's burden to prove that its overhead was nonetheless attributable mainly to "Feelings." The jury, which assessed the credibility of the testimony about Fermata's expenses, was entitled to reject Fermata's evidence. In *Sygma Photo News, supra,* 778 F.2d at 95, we held that even when defendants had not been able to establish their costs with precision, they should be able to deduct the minimum amount they in all likelihood spent. The jury's decision to allow Fermata only an 8 percent reduction for its costs is not inconsistent with that rule.

## Conclusion

In sum, we hold that the presumptive validity of appellee Gaste's copyright in "Pour Toi" was not rebutted, that the jury was not unreasonable in finding that appellants infringed Gaste's copyright, that the purported errors on the part of the trial judge do not warrant a new trial, and that the amended damages award should stand. Appellants' other contentions have been considered and rejected.

The judgment of the District Court is affirmed.