**Samuel A. ZERVITZ**

v.

**HOLLYWOOD PICTURES, INC.,** et al.

**No. Civ.A. WMN–94–1068.**

United States District Court,
D. Maryland.

March 31, 1995.

Frances Joseph Gorman, Gorman & Williams, Baltimore, MD, for Plaintiff.

Thomas C. Gentner, Rollins, Smalkin, Richards & Mackie, Baltimore, MD, for Defendants.

## MEMORANDUM

NICKERSON, District Judge.

Pending before the Court is the Motion for Summary Judgment filed by Defendants Hollywood Pictures, Buena Vista Pictures Distribution, Interscope Communications, Ted Field, Robert W. Cort, and Rosalie Swedlin. Based on the applicable law and the arguments presented by counsel at a hearing on March 31, 1995, the Court will deny Defendant's Motion for Summary Judgment.

## I. BACKGROUND

This litigation arises out of the motion picture entitled "The Air Up There," released in 1993. Plaintiff, Samuel Zervitz alleges that he authored the story on which the movie was based and brought this copyright infringement action against the following Defendants: Hollywood Pictures and Buena Vista Pictures Distribution, Inc. ("Hollywood Pictures"), Interscope Communications, Inc. ("Interscope"), Ted Field ("Field"), Robert Cort ("Cort"), Rosalie Swedlin ("Swedlin"), and Max Apple ("Apple").[1]

During 1987, Plaintiff authored a synopsis entitled "Recruiting." The story involves a young, charismatic basketball coach at Mt. Saint Michaels College, a fictitious Catholic university in Western Maryland. He travels to Africa to recruit a tall player for his team. During this recruiting trip, the coach stays with native African tribal members and experiences their culture. Plaintiff states that he got the idea for the story by following the career of Manute Bol, a professional basketball player for the Washington Bullets who was born and raised in Africa.

On October 14, 1989, Plaintiff forwarded "Recruiting" to Marie Rowe ("Rowe") of Baltimore Pictures in California. Baltimore Pictures, formed in 1989, is Barry Levinson's production company. Plaintiff had previously met Rowe when she was in Baltimore for the shooting of Barry Levinson's movie, "Tin Men." By letter dated January 16, 1990, Rowe responded to Plaintiff's submission of "Recruiting," stating that she had read the synopsis and had shown it to a person on the development staff of "Baltimore Pictures." She further stated that she found the synopsis "interesting," but was unable to make any commitments based on a synopsis. Rowe's letter goes on to state: "Perhaps you're considering writing a script yourself, and if this is the case, then you might like to submit this to us." Plaintiff's Opposition, Exhibit B to Exhibit 4, Affidavit of Samuel Zervitz.

Plaintiff again wrote to Rowe on January 23, 1990 and stated that he would be interested in writing a scripted version of "Recruiting ." Rowe did not respond to this correspondence and apparently Plaintiff never submitted a script based on "Recruiting."

Plaintiff alleges that Defendants had access to his synopsis in the following manner: In 1986, when Rowe was in Baltimore, Plaintiff shared an idea for a movie which he had developed in novel form. The story, entitled "The Outlaw League," involved a Depression-era black baseball team located in Baltimore. By letter dated May 10, 1987, Plaintiff wrote Barry Levinson directly about "The Outlaw League." By letter dated June 25, 1987, Rowe informed Plaintiff that she had received Plaintiff's correspondence to Barry Levinson. She further advised Plaintiff that she was no longer working for Levinson and that he should address any further correspondence to Levinson's literary agent, Rosalie Swedlin ("Swedlin") at Creative Artists Agency in Los Angeles. He submitted "The Outlaw League" to Swedlin, but she did not respond.

Swedlin is one of the producers of "The Air Up There" and a defendant in this action. She was and is married to Defendant Robert Cort of Interscope Communications, also one of the movie's producers. Plaintiff alleges that Marie Rowe forwarded the "Recruiting" synopsis which she had described as "interesting" to Swedlin who in turn discussed the story with her husband, Robert Cort. Cort subsequently shared the story with Max Apple, the writer of the movie.

Rowe denies that she ever sent "Recruiting" to Swedlin. Swedlin denies that she had ever received a copy of the story and states that she had never heard of the project until this litigation began. Swedlin also denies that she had any conversations with her husband regarding "Recruiting" prior to this litigation. In addition, Apple denies reading, seeing, or hearing of "Recruiting" before the instant litigation.

Apple is an English professor at Rice University in Houston, Texas. In 1987, Apple entered into an agreement with Defendant Interscope Communications to make an article that Apple had written for the *New York Times Magazine* into a movie. As part of the development of this project, Apple en-

---

**1.** Defendant Apple has been dismissed from the case for lack of personal jurisdiction.

tered into on "open commitment agreement" on May 31, 1989, under which he agreed to render writing services on a project to be determined in the future by Apple and Interscope.

On July 10, 1989, Apple met with Cort in New York City to discuss the development of a project pursuant to the open commitment agreement. Apple pitched an idea for a script based on the career of Hakeem Olajuwon, who played for the Houston Rockets. Olajuwon had been recruited from Africa to play basketball at the University of Houston. On this date, Apple and Cort agreed that Apple would begin working on a project which would be given the development title "African Basketball."

During the summer of 1989, Apple began teaching a course at Skidmore College in Saratoga, New York. While at Skidmore, Apple began researching African tribes. He continued his research when he returned to Rice University in Houston. In September, 1989, Apple met with representatives from Interscope to discuss further development of "African Basketball." On August 15, 1990, Apple delivered a five-page story outline and character outline to Interscope. On January 14, 1991, Apple delivered a first draft of the script to Interscope, and on July 2, 1991, Apple delivered an official draft to Interscope. In December 1993, Defendants began distributing and promoting the movie entitled "The Air Up There."

## II. DISCUSSION

■ To establish copyright infringement, Plaintiff must prove two elements: (1) ownership of a valid copyright; and (2) copying by Defendants. 3 *Nimmer on Copyright,* § 13.01 at 13–5. Defendants motion for Summary Judgment is based on the second element, copying.

■ Naturally, direct proof of copying is rare. Therefore, Plaintiff may prove copying circumstantially by showing that (1) Defendants had access to Plaintiff's work; and (2)

Defendants' work is substantially similar to Plaintiff's work. *Id.,* § 13.01[B] at 13–10.

■ Plaintiff can establish access by showing that Defendants had an "opportunity to view or to copy" his work. *Moore v. Columbia Pictures,* 972 F.2d 939, 942 (8th Cir.1992) (citations omitted). Establishing a "bare possibility" of access is not enough; rather, Plaintiff must prove that Defendants had a "reasonable possibility" of access. *Id.* Access may be inferred by: (1) evidence of review by a member of a work unit that includes one of the defendant-copiers; (2) evidence that possession by a third party who was an intermediary in a channel of communication between a plaintiff and one of the defendant-copiers; (3) evidence that the work was widely disseminated; and (4) evidence that the two works at issue are "strikingly similar." [2] *See* 3 *Nimmer on Copyright,* § 13.02 [A] at 13–18–24.

■ In the instant case, Plaintiff clearly cannot claim that the basic concept of a coach's efforts to recruit an African basketball player could only have been created by him. The fact that Apple and Cort had discussed the "African Basketball" project prior to the date that Plaintiff submitted his synopsis contradicts such an assertion. However, Plaintiff appears to argue that even if Defendants independently created such a concept, they subsequently had access to his synopsis and used it in their production of "The Air Up There."

Plaintiff's claim of access is supported by some evidence of a channel of communication between Marie Rowe and Rosalie Swedlin. Distinguishing between a bare possibility of access and a reasonable possibility of access presents a close question. 3 *Nimmer on Copyright,* § 13.02[A] at 13–20–21. However, the Court must draw all inferences in favor of Plaintiff at this stage of the pleadings, and therefore finds that summary judgment on the issue of access is improper.

In addition, Defendants argue persuasively that many of the similarities Plaintiff alleges are simply *scenes a faire* or scenes that

---

**2.** "Striking similarity" refers to the situation where two works "are so nearly identical that it is virtually inconceivable" that the second work

was independently created. *Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir.1988).

**730**

naturally flow from a common theme. These arguments, however, are more appropriately addressed to the trier of fact and cannot be disposed of as a matter of law. Accordingly, Defendants' Motion for Summary Judgment will be denied. A separate order will issue.

### ORDER

In accordance with the foregoing Memorandum and the reasons stated therein, IT IS this 31st day of March, 1995, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment be DENIED; and

2. That the Clerk of the Court mail copies of the foregoing Memorandum and this Order to all counsel of record.