**Maree McRAE a/k/a Mary M. Whisenand, Plaintiff,**

v.

**Gerald SMITH, Wayne Perry, Sony Music Entertainment, Inc., O–Tex Music Publishing Company, and Zomba Enterprises, Inc., Defendants.**

**Civil Action No. 95–CV–2030–J.**

United States District Court, D. Colorado.

June 30, 1997.

**560**

Thomas J. Overton, Overton & Feeley, P.C., Denver, CO, for Plaintiff.

Richard Lance Gabriel, Holme Roberts & Owen, L.L.P., United States District Court, Denver, CO, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter came before the court for hearing on July 15, 1996, on defendants' Motion for Summary Judgment. The court has considered the Motion, defendants' Opposition, all materials submitted in support of and in opposition to the motion, has heard argument of counsel and is fully advised.

In this copyright case, plaintiff Maree McRae alleges that defendants' song "Every Second" infringed her copyrighted song "Every Minute, Every Hour, Every Day." Both songs are Country and Western songs. Plaintiff copyrighted her song in 1983. She recorded a version (the parties dispute whether the recorded version differed much from the copyrighted version) in 1984 and distributed the tapes to various companies and individuals. She won an award for the song and it was placed on the Rocky Mountain Music Association's Compilation Tape in conjunction with an event known as MusicFest '87. In addition, she performed the song regionally.

Defendants contend that in February 1990, defendants Smith and Perry independently created their song. The Smith Perry song was used on Collin Raye's "All I Can Be" album from Sony Music. Defendants deny that they ever had access to plaintiff's song and deny that it is similar to plaintiff's song.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment and contend that plaintiff has failed to establish defendants had access to her song, including that she has failed to establish that the two songs at issue are so "strikingly similar" that there can be a reasonable inference of access under case law in the absence of direct proof of access. Defendants also contend that even if an issue of fact on access is shown, plaintiff has failed to show that the two songs are "substantially similar." Defendant also contends that the tape plaintiff distributed in the music industry was not protected by the copyright because it was a "derivative work."

## STANDARD FOR SUMMARY JUDGMENT

This court must grant summary judgment "if the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Although summary judgment has "traditionally been frowned upon in copyright litigation ... a series of copyright cases in the Southern District of New York have granted defendants summary judgment when all alleged similarity related to non-copyrightable elements of the plaintiff's work." *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2nd Cir.1980) (granting defendant summary judgment in case alleging infringement of book on Hindenburg air disaster).

■ Granting summary judgment permits courts to put "a swift end to meritless litigation: and to avoid lengthy and costly trials." *Id. (quoting Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2nd Cir.1980)). "Substantial similarity is usually an extremely close issue of fact and summary judgment has been disfavored in cases involving intellectual property. It is appropriate, however, if reasonable minds could not differ as to the absence of substantial similarity in expression." *Litchfield v. Spielberg,* 736 F.2d 1352, 1355–56 (9th Cir.1984) (citations omitted) (summary judgment granted in favor of defendant in case alleging screenplay for "E.T.—the Extra Terrestrial," infringed copyrighted musical play).

> [I]f the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In copyright infringement cases, courts have regularly granted summary judgment where it is clear that the plaintiff cannot make out the elements of the claim. *Repp v. Lloyd Webber,* 858 F.Supp. 1292, 1300 (S.D.N.Y.1994) (granting defendant summary judgment in case alleging that Andrew Lloyd Webber's "Phantom's Song" infringed copyright of song "Till You").

■ Thus, in copyright cases, although the traditional rule, based upon the influential 1946 case *Arnstein v. Porter,* 154 F.2d 464 (2nd Cir.1946), was to deny summary judgment where there was the slightest doubt as to fact, that rule had been replaced with the ordinary rule of summary judgment: "once the moving party has properly supported his summary judgment motion, the nonmoving party must rebut with significant evidence" of the elements of the claim. *Id.* at 470 n. 13.

## COPYRIGHT CASE LAW

■ In order to prevail on its copyright infringement claim, plaintiff must establish both: (1) that it possess a valid copyright and (2) that defendants "copied" protectable elements of the copyrighted work.... This examination involves two distinct inquires: first, whether defendants, as a factual matter, copied plaintiff's work, and second, whether, as a mixed issue of fact and law, those elements that were copied were protected. The second inquiry will

require us to determine which elements of plaintiff's work are protectable.

*Country Kids'n City Slicks, Inc., v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996) (alleging infringement of design for wooden "paper dolls").

In a copyright infringement action a "plaintiff may prove defendants's copying either by direct evidence or, as is most often the case, by showing that (1) the defendant had access to the plaintiff's copyrighted work, and (2) defendant's work is substantially similar to the plaintiff's copyrightable material." *Computer Assoc. Int'l v. Altai, Inc.,* 982 F.2d 693, 701 (2nd Cir.1992); 3 *Nimmer on Copyright* § 13.01[B], at 13–10 to –11. These two types of circumstantial evidence of infringement are accepted because direct evidence of copying is rarely available.

*Autoskill v. Nat'l Educational Support Systems,* 994 F.2d 1476, 1489 (10th Cir.1993) (alleging infringement of computer software reading system).

On access, a plaintiff may meet his initial burden of proof by showing that the defendant had a "reasonable opportunity to view" or "opportunity to copy" the allegedly infringed work. 3 *Nimmer on Copyright* § 13.02[A] & n. 5, at 13–15 to –16; *see also, e.g. Robert R. Jones Assoc. Inc. v. Nino Homes,* 858 F.2d 274, 277 (6th Cir. 1988) (concluding "[a]ccess merely means an opportunity to view the protected material"). We agree that defining access as the "opportunity" to view or copy makes sense for the purpose of shifting the burden to the defendant, and we follow this approach.

*Autoskill,* 994 F.2d at 1490.

 Direct proof of copying is rare and plaintiffs will typically rely on the indirect method of proof. *Gates Rubber Co. v. Bando Industries, Ltd.,* 9 F.3d 823, 833 (10th Cir. 1993) (copyright for computer software).

Ultimately, to prove factual copying, the plaintiff must come forward with sufficient evidence that a reasonable fact finder, taking together the evidence of access and the similarities between the programs, could find that the second work was copied from the first.

*Gates Rubber,* 9 F.3d at 823.

The degree of similarity between [software] programs necessary to give rise to the inference that copying occurred will vary from case to case. *Arnstein,* 154 F.2d at 469. A high degree of similarity may permit access to be inferred. Conversely, where there is strong proof of access, the necessary showing of factual similarity will be relatively lower. However, we note that no matter how conclusive proof of access may be, liability may not attach without some showing of similarity.

*Id.* at 833 n. 9 (citations partially omitted).

Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identity), if the defendant did not copy the accused work, there is no infringement. . . . The most important component of this sort of circumstantial evidence is proof of access. The plaintiff may be able to introduce direct evidence of access when, for example, the work was sent directly to the defendant (whether musician or a publishing company) or a close associate of the defendant. On the other hand, the plaintiff may be able to establish a reasonable possibility of access when, for example, the complaining work has been widely disseminated to the public.

If however, the plaintiff does not have direct evidence of access, then an inference of access may still be established circumstantially by proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded. If the plaintiff presents evidence of striking similarity sufficient to raise an inference of access, than copying is presumably proved simultaneously, although the fourth element (substantial similarity) still requires proof that the defendant copied a substantial amount of the complaining work.

*Selle v. Gibb,* 741 F.2d 896, 901–902 (citations partially omitted) (affirming grant of defendants' motion for judgment notwithstanding the verdict and holding that composer failed

to establish a basis from which jury could reasonably infer that defendants had access to his song or to meet his burden of proving "striking similarity" between the two compositions).

■ In comparing the songs at issue in this case, the court must use the abstract-filtration-comparison test. *Country Kids,* 77 F.3d at 1285 & n. 5 (adopting test for general use in copyright cases).

> At the abstraction step, we separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work. Then, we filter out the nonprotectable, from the particular expression of the work. Then we filter out the nonprotectable components of the product from the original expression. Finally, we compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar.

*Id.* at 1285.

*In Country Kids* the Tenth Circuit explained how this test works in a case where the plaintiff alleged that an original combination of otherwise nonprotectable elements resulted in a protectable design for a wooden paper doll.

> In attempting to focus on the originality of its creation, plaintiff invokes *Fisher–Price Toys, Div. of Quaker Oats Co. v. My–Toy Co.,* 385 F.Supp. 218 (S.D.N.Y.1974). However, *Fisher–Price* fails to advance plaintiff's argument. In *Fisher–Price,* the court stated that even if a doll is composed of a series of different features, which in and of themselves are nonprotectable, the "original combination of these features" may render the doll protectable. *Id.* at 220. However, to the extent that certain similarities between a copyrighted work and an allegedly infringing work are inherent in a nonprotectable idea—*i.e.,* the general features of a doll—we must filter those similarities out of the comparison.

*Id.* at 1286.

Defendants have supported their Motion for Summary Judgment with evidence that they had no access to plaintiff's song, that they independently created the song prior to offering it to defendant Sony, and that the songs are not even substantially similar much less strikingly similar. In opposition to summary judgment plaintiff has attempted to raise material issues of fact that could show that defendants could have had access to her song and that the song is both substantially similar and strikingly similar to her own song.

### NO DIRECT EVIDENCE OF ACCESS

■ Plaintiff contends that certain evidence shows that defendants could have had access to her song. However, the undisputed facts do not raise an inference of access arising from plaintiff's proffered evidence.

Plaintiff made between 200 and 500 tapes of her song and distributed them to various publishing companies. However, plaintiff has been unable to testify as to any specific person or entity to whom she sent any of these tapes. Plaintiff could not recall sending any tapes directly to any of the defendants. Plaintiff testified that copies of the tape of her song were "sent randomly out" to the list of companies contained in the Songwriters Handbook. None of defendants are listed in the only copy of the Songwriter Handbook that is in evidence.

Three of the four individuals plaintiff alleges received tapes testified that they had not heard of the defendant/composers and did not send any tapes to them. A fourth person, Kim Vassy, heard the song in Denver and asked for a copy of plaintiff's song. Dines depo at 101. Mr. Vassy lived in Nashville and ran a publishing company where he was sent a tape of plaintiff's song. However, Mr. Vassy subsequently died and there is no evidence that Mr. Vassy distributed plaintiff's song to any person in Nashville, or played the song for any person in Nashville, including defendants.

Plaintiff performed her song in various locations in Colorado and Wyoming. However, it is undisputed that the composers of "Every Second" were not in those states at any of the times plaintiff performed her song.

A compilation tape containing plaintiff's song was made by the Rocky Mountain Music Association in conjunction with an event

called MusicFest '87. The compilation tapes were sold at the MusicFest and at the several stores in Colorado. However, there is no evidence to show that such a tape was distributed to the composers of "Every Second," to anyone who knew them, or to any one who had anything to do with the creation of "Every Second."

Judy Ross is an employee of defendant Sony Music. Ms. Ross was a panelist at the MusicFest '87. At that time Ms. Ross was a representative of Epic/Portrait records, which is a label for Sony. Zander depo at 24. Katherine Dines, who conceived and coordinated the MusicFest, testified that she placed a compilation tape in a packet of materials given to each panelist. Ms. Ross does not remember if the packets contained a tape and does not recall receiving the compilation tape. It is undisputed that Ms. Ross does not know defendants Smith and Perry, the composers of "Every Second." There is nothing in the record that contradicts her statement in her deposition that she is certain that had she received such a tape, she did not send it to Mr. Smith, Mr. Perry, Zomba Music or O–Tex Music. Further, it is undisputed that Sony had no contact with the composers of "Every Second" until after it was written.

The compilation tape was sent to one person in Nashville. That person was Larry Hamby, then of CBS Records Nashville, which later became Sony Music. Mr. Hamby does not recall receiving the compilation tape, hearing plaintiff's song and does not know plaintiff. Similarly, Mr. Hamby does not know the composer/defendants and was not involved in any way in the creation of the song "Every Second." It is undisputed that defendant Sony Music was not involved in any way in the creation of the song "Every Second." Sony had no involvement with the song "Every Second" until after it was written and after the producers of Collin Raye's "All I Can Be" album had heard the demo tape and decided to use the song. Because the undisputed evidence shows that Mr. Hamby, Mr. Ross and Sony Music had no contact with the composers until after "every Second" was written and recorded on a demo

tape, there is no evidence of access through them.

Plaintiff entered her song in four music contests. Pl.'s depo. at 72. In the Colorado Composers Classic contest, plaintiff was a quarter finalist. In the 1987 Music City Song Festival, based in Nashville, plaintiff won an honorable mention. The tape of plaintiff's song that was sent to Nashville for the Music City Song Fest never left the office of Roy Sinkovich, the person in charge of the Music Fest. Mr. Sinkovich testified further that the tape would have been destroyed after the contest and that he has never had any relationship with any of the defendants. The names of Music City Song Fest contest winners were published in Sound Makers magazine. Sinkovich depo. at 20. However, there is no evidence that the name of plaintiff's song "Every Minute, Every Hour, Every Day" was published. *Id.*

During part of 1988, defendant Zomba was accepting unsolicited tapes on his regular office stereo system. However, there is no evidence that plaintiff ever sent a tape of "Every Minute, Every Hour, Every Day" to Zomba or that Zomba ever received a copy of plaintiff's song.

Plaintiff contends that access may be established merely by showing that her song "has been distributed to the public." Plaintiff's Reply Brief at 8 (citing *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir.1984)). In *Selle* the court noted that with respect to evidence of access offered to prove the elements of "copying" in a music copyright infringement claim, plaintiff may be able to establish a reasonable possibility of access "when, for example, the complaining work has been widely disseminated to the public." 741 F.2d at 901–02. However, as extensively discussed in *Selle*, the public dissemination necessary to infer that a defendant might have had access to the work is considerable. *Id.* at 902–03. In *Selle*, the court noted that in the case of *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997–99 (2nd Cir.1983) such access via wide dissemination was found because the complaining work was on the top of the charts for weeks in England and the United States during the year in which the infringing song was composed.

The facts offered by plaintiff do not begin to show wide dissemination within the meaning of *Selle*. At best, there was brief and regional dissemination with less than 500 tapes ever made. While the song was played in a few live performances in Colorado and Wyoming, which defendant composers did not attend, there is no evidence that the song was disseminated nationally or that it was played or heard via any national medium such a radio or television. The evidence in this case falls short of even that offered in *Selle*, where the court held "the availability of Selle's song, as shown by the evidence, was virtually de minimis." 741 F.2d at 902.

The evidence before the court on summary judgment does not show that there is a reasonable probability of access. Viewed in the light most favorable to plaintiff, the evidence shows only the barest possibility, based upon hypothetical speculation and conjecture that defendants could have had an opportunity to hear and copy plaintiff's song.

Because none of the alleged intermediaries knew the corporate defendants or had any professional contact with the composers or the song until well after it was created, the evidence falls far short of that needed to establish an issue of fact of access through intermediary.

In the absence of any evidence that defendants had a "reasonable opportunity to view" or "opportunity to copy" the allegedly infringed work, the court finds that there is insufficient evidence from which a reasonable jury could find a reasonable probability of access.

### PROTECTABLE ELEMENTS NOT STRIKINGLY SIMILAR

In the absence of any evidence whatsoever that defendants had an opportunity to hear and copy plaintiff's song, plaintiff seeks to raise an inference of access by showing the songs are similar. The degree of similarity necessary to show copying varies depending upon the showing of access. *Country Kids,* 77 F.3d at 1280 n. 4. In *Country Kids,* there is dicta suggesting that the Tenth Circuit follows the rule that a "greater showing of similarity may allow access to be inferred where it is not otherwise shown." *Id. (citing*

*Gates Rubber,* 9 F.3d at 833 n. 9). This position—that even in the absence of any proof of access, it can be inferred if the works are so "strikingly similar" as to preclude independent creation—is stated in the case *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111 (5th Cir.1978). *Id.* (citing *Ferguson* ). In *Ferguson,* the court held:

> Even without proof of access, plaintiff could still make out her case if she showed that the works were not just substantially similar, but were so strikingly similar as to preclude the possibility of independent creation. 3 M. Nimmer, Copyright § 13.-01[A].

*Id.* at 113.

This is the clear majority rule, adopted in such cases as *Gaste v. Kaiserman,* 863 F.2d 1061 (2nd Cir.1988), which involved the well-known song "Feelings." In *Gaste* the court noted that the Nimmer treatise on Copyright criticizes the position of the court in Selle that "there be a 'reasonable possibility' of access—not just a 'bare possibility'—even in cases of striking similarity." *Id.* at 1068.

> Though striking similarity alone can raise an inference of copying, that inference must be reasonable in light of all the evidence. A plaintiff has not proved striking similarity sufficient to sustain a finding of copying if the evidence as a whole does not preclude any reasonable possibility of independent creation.

> \* \* \* \* \* \*

Thus, striking similarity between pieces of popular music must extend beyond themes that could have been derived from a common source or themes that are so trite as to be likely to reappear in many compositions.

*Id.* at 1068–69.

This court has previously analyzed a claim that an allegedly infringing song was "strikingly similar" to a plaintiff's song.

> An alternative way to prove access is to show that the two songs are "strikingly similar." This term suggests such a close degree of similarity that independent creation could not have been possible. *Ferguson,* 584 F.2d at 113; *Hofmann [v. Press-*

*man Toy Corp.*, 790 F.Supp. 498, 508 (D.N.J.1990) ]. Courts have interpreted this standard very stringently. *See Hoffmann*, 790 F.Supp. at 509 (holding that two games would have to be virtually identical to meet this standard). This is particularly true in cases where courts have examined popular music. *Selle*, 741 F.2d at 903 n. 3 (holding that two songs were not strikingly similar despite the fact that a composer and performer of the allegedly infringing song incorrectly identified plaintiff's work as his own).

> An opinion establishing strikingly similarity should address the uniqueness or complexity of the protected work as it bears on the likelihood of copying. This is particularly important with respect to popular music, "in which all songs are relatively short and tend to build or repeat a basic theme."

*Benson*, 795 F.2d at 975 n. 2 (quoting *Selle*, 741 F.2d at 905). The Second Circuit when determining whether two works are strikingly similar, stated that "[i]n assessing this evidence, we are mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music." *Gaste*, 863 F.2d at 1068. The burden of proving "striking similarity" is on the plaintiff. *Selle*, 741 F.2d at 905. *Cartier v. Jackson*, 59 F.3d 1046, slip op., at 10–12 (D.Colo. Nov. 8, 1993).

In assessing whether a song is "so strikingly similar" as to allow an inference of access in the absence of any evidence of the possibility of access the court looks to the abstract-filtration test described above. In this respect, this court's analysis differs slightly from that in Cartier, supra, which did not have the benefit of the *Country Kids* opinion adopting the abstract-filtration-comparison test for general use in copyright cases. However, as noted above, although *Cartier* did not expressly use the abstraction-filtration-comparison test, it did stress that the fact there were limited themes and many common elements in popular music which are not relevant to the strikingly similar determination.

■■■ In this case defendants presented evidence of their experts showing the following, all of which is not disputed by plaintiff's experts: The musical pitches or notes that comprise the melodic lines or tunes of the two songs at issue do not share significant amounts of either pitch or rhythm. Def.'s Ex. V at 1; Ex. W at 2–3. At no place in the two songs are three musical notes in a row that are the same. Jones Depo. at 91–92, 201–02. In the "hook" of the two songs not one musical note or pitch is the same. Jones Depo. at 91–92, 183–88, Prorak Depo. at 64–65; Def's Ex. V. at 2, Def's Ex. W at chart I. The chord progressions of both songs, which are known as I–IV–V progressions, are the most common chord progressions in all of the music of Western civilization. Def's Exs. X at 155, Z at 33, AA at 113 and 228, W at 3. The chord changes are the same in only four out of twenty chord changes in the songs. Def.'s Ex. CC, Ex. V at 8. No two melodic phrases in these songs have the same rhythm. Ex. V at 1, Ex. W at 2–3. The rhythmic settings of the "hook" phrase are different. Def.'s Ex. AA, Ex. Z at 50–51, Ex. W Chart I; Ex. CC at 4. The lyrics of the songs have only six words in common—"every minute, every hour and every day." That phrase is not unique or original to plaintiff or defendants. That phrase appears in at least 8 songs that predate the songs at issue. In some combination or another over 100 songs written before the two at issue contain some combination of the phrases "every second," "every minute," "every hour," and/or "every day" in the same context. Def.'s Ex. BB.

The similarities that plaintiff's experts do identify fail to filter out the nonprotectable components of the songs from the original expression that is protectable. For example, plaintiff's experts focus on such things as the rhythm, a two-step that is similar to many other country songs[1]; the general theme of a first person love song[2], the chord progression and rhythmic feel which is also used in

---

1. Def.'s Ex. Y at 69, 71, 87–88; Ex. AA at 175–76.

2. Def.'s Ex. Y at 88, Ex. AA at 88–90, 124–27, 138–50.

thousand of other songs [3], the music shape of the melodic lines in the hook as descending, a trait shared by other songs [4], the mood which is shared by many other songs,[5] and the verse-chorus-verse-chorus form which is one of the most common in Country music.[6]

Although plaintiff's experts opine that the songs are strikingly similar or so similar as to preclude independent creation,[7] an issue of fact cannot be created by merely reciting the magic words "strikingly similar" and "no possibility of independent creation." As noted above, plaintiff has not come forward with specific evidence that, filtering out the common and nonprotectable elements of these songs, they are so strikingly similar as to preclude independent creation. Plaintiff's experts have failed to refute the evidence of dissimilarities in these nonprotectable areas and instead focus their analysis on areas that are common to songs of the country western genre and therefore must be filtered out before the comparison is made.[8]

In contrast, in *Gaste*, the court found the following evidence of striking similarity:

> Gaste's expert testified not merely to common musical phrases in the songs but said that *"there is not one measure of 'Feelings' which ... cannot be traced back to something which occurs in 'Pour Toi.'"* He also pointed to a *unique musical "fingerprint"—an "evaded resolution"—that occurred in the same place in the two songs.* The witness said that while modulation from a minor key to its relative major was very common, *he had never seen this particular method of modulation in any other composition.*

3. Def.'s Ex. Z at 32–33, 68–70.

4. Def's Ex. Z at 53–56 (admitting that defendant's hook contains also some ascending notes).

5. Def.'s Ex. AA at 119.

6. Def.'s Ex. AA at 171–72.

7. Pl.'s Ex. 3, 243–44; Ex. 7 at 73–75, Ex. 1 at 98, Ex. 5 at 196, Ex. 4 and Ex. 9.

8. The court makes no finding on whether, if there were any evidence to show access, plaintiff's experts' opinions would be sufficient to raise an issue of fact on substantially similarity, a much less stringent standard. *See Cartier*, slip

863 F.2d at 1068 (emphasis added, footnotes omitted).

In this case there is no such evidence of similarities of unusual musical footprint that is not common to other songs. There is no evidence of a measure by measure similarities aside from the similarities common to the genre or to Western music in general. In short, plaintiff's evidence does not meet the strict standard set for showing strikingly similar

Finally, plaintiff contends that a determination of striking similarity must be determined by listening to the entire song at issue in conjunction with the expert testimony. That is true if there is sufficient evidence to go to the jury with the question as there had been in the *Gaste* case relied upon by plaintiff. However, at this summary judgment stage the court is charged with determining whether there is sufficient evidence to go to the jury on the issue of striking similarity. Nonetheless the court was provided with, and listened to, tapes of the songs and found that to the ordinary ear the songs are not at all similar.[9] Further, to the court it appears that the songs' expressions as first person love songs are not strikingly similar either. In the allegedly infringing song, the words "every second" are used as part of a play on words relating to a lover's reassurance about a lack of "second thoughts." These are concepts that are entirely absent from the McRae song which is exclusively a celebration of a seemingly perfect love.

In this case, as in *Ferguson*, there is insufficient evidence that could, if believed by the

op. at 10–14 (finding that same expert testimony that did not raise issue of fact on a claim the songs were "strikingly similar" did raise issue of fact on the claim the songs were "substantially similar").

9. *See Cartier*, slip op. at 15 eexamining substantial similarity under the intrinsic test and citing *Feder v. Videotrip Corp.*, 697 F.Supp. 1165, 1171 (D.Colo.1988) for a holding that a side–by–side comparison of two works is proper in a copyright infringement action in order to determine whether summary judgment is appropriate. In *Cartier v. Jackson*, 59 F.3d 1046, 1050 (10th Cir.1995) the Tenth Circuit noted that this test had not been addressed or adopted in this circuit, although it has been in other circuits.

jury, establish such striking similarity that access could be inferred in the absence of any actual evidence of access. 584 F.2d at 114 ("In truth the plaintiff fails to establish mimicry. A few notes do not a song make.").

Because the court has found that defendants have shown that there is no issue of fact that shows access and that the songs are not strikingly similar, the court need not address defendants remaining arguments. Accordingly, plaintiff has failed to meet her burden in opposing defendants' Motion for Summary Judgment. It is therefore

ORDERED that defendants' Motion for Summary Judgment is **GRANTED**.