**Joseph Anthony TOMASINI Plaintiff,**

v.

**The WALT DISNEY COMPANY, Walt Disney Pictures and Television, Buena Vista Television, Disney Interactive, Inc., and ABC, Inc., Defendants.**

No. 97 Civ. 8989(SHS).

United States District Court,
S.D. New York.

Feb. 14, 2000.

Carl E. Person, New York City, for Joseph Anthony Tomasini.

Joseph Anthony Tomasini, Cross River, NY, pro se.

R. Bruce Rich, Weil, Gotshal & Manges, L.L.P., New York City, Kenneth E. Newman, The Walt Disney Co. Corporate Legal Dept., New York City, for Walt Disney Co.

R. Bruce Rich, Weil, Gotshal & Manges, L.L.P., New York City, for Buena Vista Television, Walt Disney Pictures and Television, Disney Interactive, Inc., ABC, Inc.

Edward J. Boyle, Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., New York City, for Joseph Pellegrino.

## OPINION

STEIN, District Judge.

Plaintiff Joseph Anthony Tomasini brought this copyright infringement action against defendants The Walt Disney Company, Walt Disney Pictures and Television, Buena Vista Television, Disney Interactive, Inc., and ABC, Inc. (collectively, "Disney"). In the complaint, Tomasini alleges that Disney, during the development and production of its "Gargoyles" animated television series, improperly copied Tomasini's copyrighted gargoyle character designs and screenplay. Following discovery proceedings on the question of whether Disney had access to Tomasini's copyrighted material, Disney has moved for summary judgment dismissing the complaint pursuant to Fed.R.Civ.P. 56(c). Disney contends that Tomasini has, as a matter of law, failed to produce evidence to establish that Disney had that access. For the reasons set forth below, Disney's motion for summary judgment is granted.

## BACKGROUND

Joseph Anthony Tomasini is an independent artist with a specialty in two and three dimensional animation. Inspired by a visit to Notre Dame Cathedral in Paris, Tomasini began in 1988 to develop what he refers to as his "Gargoyles Property." The Gargoyles Property consists of photo-realistic gargoyle drawings, gargoyle character designs, educational information, and a synopsis and screenplay depicting the spiritual journey of a young boy in his relationship with living gargoyles. On November 11, 1993, Tomasini registered the screenplay with the Writers Guild of America, and on March 19, 1993, he filed for copyright registration of the character designs, setting forth a creation date of 1991. *See* Aff. of Joseph A. Tomasini Ex. H. In 1999, Tomasini filed for copyright registration as to the remainder of his

Gargoyles Property. *See generally* Aff. of Tomasini ¶¶ 1–20.

Over the course of several meetings in 1991, Tomasini delivered the Gargoyles Property to Joseph M. Pellegrino, who allegedly agreed to act as Tomasini's agent in seeking to license the property as the basis for an animated television production. *See id.* ¶¶ 21–37. Tomasini selected Pellegrino because of his experience in marketing television animation projects, including his employment with Disney starting in 1964. That work involved licensing animated characters and lasted until December 1986, when Pellegrino left to start an independent licensing business. *See* Aff. of Tomasini Ex. A; Aff. of Carl E. Person Ex. I; Joseph M. Pellegrino Dep. Tr. at 8, 11–12, 31–32. Based on Pellegrino's experience and connections with Disney, Tomasini understood that Pellegrino intended to market his Gargoyles Property to Disney and other producers of animated television projects. *See* Aff. of Tomasini ¶¶ 45–50; Tomasini Dep. Tr. at 325–35. Pellegrino himself testified he believed at the time that the Gargoyles Property had "tremendous potential in the animation area." Pellegrino Dep. Tr. at 92. In late 1992, however, Pellegrino closed his licensing business and dissolved his relationship with Tomasini, although he apparently continued to work in entertainment marketing through 1999. *See* Aff. of Tomasini ¶¶ 38–40; Aff. of Person Ex. F, I; Aff. of Pellegrino ¶ 2.

Disney is engaged in the development and distribution of a variety of entertainment products. *See* Answer to Am. Compl. ¶ 4. Beginning in the first half of 1991, Disney developed its "Gargoyles" animated series, which eventually premiered on television in October 1994. *See* Aff. of Tomasini ¶ 44; Gregory D. Weisman Dep. Tr. at 33. The "Gargoyles" series was developed at Disney under the direction of Gregory Weisman, the Disney executive who served as Supervising Producer of the series, *see* Aff. of Gregory D. Weisman ¶ 2; Gary Krisel, with whom Pellegrino had once worked and who served as President of Disney's Television Animation Division, *see* Pellegrino Dep. Tr. at 22; Gary Krisel Dep. Tr. at 7–8, 14–19; and Bruce Cranston, who was responsible for that division's compliance with Disney's policy of refusing to review unsolicited submissions, *see* Aff. of Bruce Cranston ¶ 2. Upon viewing the television premiere of the "Gargoyles" series, however, Tomasini became convinced that Disney had illegally copied story elements and character designs from his own Gargoyles Property. *See* Aff. of Tomasini ¶¶ 44–50.

Tomasini subsequently filed this action, which alleges copyright infringement, false designation of origin pursuant to the Lanham Act, and a number of state law causes of action. At the conclusion of discovery proceedings on the issue of whether Disney had access to the Gargoyles Property, defendants have moved for summary judgment dismissing the complaint.[1]

## DISCUSSION

### I. Summary Judgment

Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen*, 64 F.3d at 79 (citation omitted) (quoting *Lund's, Inc. v.*

---

1. The parties have stipulated that "if the Court finds for Defendants on the access issue, Plaintiff's claims will be dismissed with prejudice." Stipulation and Order dated Mar. 22, 1999.

*Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact that would require trial. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this demonstration has been made, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In particular, summary judgment must be entered when, "after adequate time for discovery and upon motion, ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

"In the context of copyright infringement, courts have regularly granted summary judgment where it is 'clear' that the plaintiff cannot make out the essential elements of the claim." *Tuff 'N' Rumble Management, Inc. v. Profile Records, Inc.,* No. 95 Civ. 0246, 1997 WL 158364, at *2 (S.D.N.Y. Apr. 2, 1997) (collecting cases); *see Repp v. Webber,* 132 F.3d 882, 890 (2d Cir.1997), *cert. denied,* 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998).

## II. Copyright Infringement

■ "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985)); *see Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 139 (2d. Cir.1992). If, as here, direct evidence of unauthorized copying is not available, such copying may be inferred upon a plaintiff's "showing '(a) that the defendant had access to the copyrighted work and (b) the substantial similarity

of protectible material in the two works.'" *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996) (quoting *Kregos v. Assoc. Press,* 3 F.3d 656, 662 (2d Cir.1993)); *see Laureyssens,* 964 F.2d at 139. Because of the posture of this suit, the present motion hinges on the element of access.

■ Access is defined as " 'having the opportunity to copy.'" *Favia v. Lyons Partnership,* No. 94 Civ. 3277, 1996 WL 194306, at *3 (S.D.N.Y. Apr. 23, 1996) (quoting *Intersong–USA v. CBS, Inc.,* 757 F.Supp. 274, 281 (S.D.N.Y.1991)), *aff'd mem.,* 112 F.3d 503 (2d Cir.1997). "Access to a plaintiff's work will not be presumed." *Tuff 'N' Rumble Management, Inc.,* 1997 WL 158364, at *3. Rather, "[a] plaintiff must offer significant, affirmative and probative evidence to support a claim of access. Conjecture or speculation of access will not suffice." *Intersong–USA,* 757 F.Supp. at 281 (citation omitted); *see Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir.1988) ("[T]here must be evidence of a reasonable possibility of access. Access must be more than a bare possibility and may not be inferred through speculation or conjecture."). "As proof of access, a plaintiff may show that '(1) the infringed work has been widely disseminated or (2) a particular chain of events exists by which the defendant might have gained access to the work.'" *Tuff 'N' Rumble Management, Inc.,* 1997 WL 158364, at *4 (quoting *Favia,* 1996 WL 194306, at *3). In establishing such a chain of events, "[a]ccess through third parties connected to both a plaintiff and a defendant may be sufficient to prove a defendant's access to a plaintiff's work." *Gaste,* 863 F.2d at 1067 (citing *De Acosta v. Brown,* 146 F.2d 408, 410 (2d Cir.1944)).

## III. Analysis

■ In opposing Disney's motion for summary judgment, Tomasini contends that Pellegrino used his connections with Disney personnel to market Tomasini's Gargoyles Property to Disney and thereby provided Disney with access to the proper-

ty. *See* Pl. Statement Material Facts ¶¶ 58, 86, 95. In response, Disney makes a number of points.

First, Disney points to its corporate policy of refusing to consider unsolicited submissions. Pursuant to that policy, all unsolicited submissions are immediately forwarded to Disney's Legal Department and returned to the submitter. Disney does not retain any copies of the submission. *See* Aff. of Cranston ¶¶ 2–3; *see also Novak v. National Broad. Co.*, 752 F.Supp. 164, 169–70 (S.D.N.Y.1990) (finding no access where defendant followed similar policy), *reargument denied*, 760 F.Supp. 47 (S.D.N.Y.1991). Tomasini responds by noting that certain categories of submissions from artists outside Disney were not immediately rejected pursuant to the policy; these exceptions permitted consideration of submissions from registered WGA agents, *see* Aff. of Person Ex. B (letter of Sherrie L. Murphey), as well as of submissions recommended by agents with whom Gregory Weisman—the Supervising Producer of the "Gargoyles" series—was personally familiar, *see* Weisman Dep. Tr. at 23. Accordingly, Tomasini argues, Pellegrino could have bypassed the corporate submission policy and submitted the Gargoyles Property to Disney's Television Animation Division.

Second, Disney asserts that, even if a submission from Pellegrino could theoretically have been accepted for consideration, both Weisman and Bruce Cranston—who was responsible for enforcing Disney's policy of refusing unsolicited materials—have stated under oath that they personally never received, reviewed, or heard of such a submission during the development of the "Gargoyles" television series. *See* Aff. of Weisman ¶¶ 4–7; Aff. of Cranston ¶ 4–5; *see also* Weisman Dep. Tr. at 28, 42–44. Krisel has similarly testified that his only contact with Pellegrino after the latter's departure from Disney was an incidental encounter at a hotel during which the two of them exchanged pleasantries but con-ducted no business. *See* Krisel Dep. Tr. at 19–20, 28–29.

Moreover, Tomasini "has presented no evidence upon which a jury could base an inference that [the testimony of defendants' employees is] not truthful." *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir.1996). For example, Tomasini has presented no concrete evidence such as a postage receipt or an entry in the Disney submissions log, *see* Weisman Dep. Tr. at 19, that would tend to establish submission of the Gargoyles Property to Disney. This lack of evidence stands in stark contrast to the many cases that have relied on evidence of such a submission in order to infer access. *See, e.g., Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 942–45 (8th Cir. 1992); *Kerr v. New Yorker Magazine*, 63 F.Supp.2d 320, 324 (S.D.N.Y.1999); *Bevan v. Columbia Broadcasting Sys., Inc.*, 329 F.Supp. 601, 609–10 (S.D.N.Y.1971); *cf. Towler*, 76 F.3d at 582–83 (insufficient evidence of access to avoid judgment as matter of law where defendant had once worked for intermediary's predecessor, and employee of intermediary allegedly told plaintiff she would forward plaintiff's work to defendant, but plaintiff failed to produce evidence of actual forwarding).

Third, Disney relies on the testimony of Pellegrino himself that he "never presented Mr. Tomasini's 'Gargoyles' concept to anyone at any time." Aff. of Pellegrino ¶ 4. Pellegrino explained that, despite the potential he saw in Tomasini's Gargoyles Property, Tomasini failed to provide him with a portfolio of color artwork or with other descriptive materials that were necessary in order to present the property to potential licensees. *See id.* Pellegrino further elaborated that he would not have approached Disney with the property, *see* Pellegrino Dep. Tr. at 71–72, and that "the primary people that I looked at [when marketing clients' properties] was [sic] Fox because they were very aggressive and were looking for material," *id.* at 46. This testimony by Pellegrino, who was the intermediary between plaintiff and defen-

dants in this suit, is probative evidence tending to weigh against a finding of access. *See Repp,* 132 F.3d at 890 (finding "little, if any, evidence demonstrating access" where intermediary "ultimate[ly] disclaime[d] . . . any allegation that he distributed [plaintiff's] music to [defendants]"); *Cox v. Abrams,* No. 93 Civ. 6899, 1997 WL 251532, at *4 (S.D.N.Y. May 14, 1997) (finding insufficient evidence of access where intermediary's personnel testified "they did not provide any part of the manuscript, or communicate its substance, to any of the defendants").

In addition, Tomasini has failed to proffer evidence that Pellegrino maintained any business-related contact with Disney personnel subsequent to his departure in 1986 that would establish "a reasonable possibility of access." *Gaste,* 863 F.2d at 1066. In reply, Tomasini attacks Pellegrino's credibility, but presents no contrary evidence. *See Vantage Point, Inc. v. Parker Bros., Inc.,* 529 F.Supp. 1204, 1213–14 (E.D.N.Y.1981) (" 'If the most that can be hoped for is the discrediting of defendants' denials at trial no question of material facts is presented.' " (quoting *Modern Home Inst., Inc. v. Hartford Accident & Indem. Co.,* 513 F.2d 102, 110 (2d Cir. 1975))), *aff'd mem. sub nom. Vantage Point v. Milton Bradley Co.,* 697 F.2d 301 (2d Cir.1982).

Tomasini further contends that Disney enjoyed access to his Gargoyles Property when Pellegrino marketed the property at the 1992 Toy Fair sponsored by the Toy Manufacturers of America. *See* Pl. Statement Material Facts ¶ 59. In particular, Tomasini points to evidence that Pellegrino, Krisel, Weisman, and possibly Cranston each attended that event, *see* Pellegrino Dep. Tr. at 52; Krisel Dep. Tr. at 20–21; Weisman Dep. Tr. at 37; Aff. of Person Ex. A, raising an inference of the possibility of access. However, Pellegrino has denied ever having marketed Tomasini's property at the Toy Fair, given that the Toy Fair functioned as a forum for toy manufacturers to market their toys for the holiday season. According to Pellegrino, there are other industry events for agents to attempt to license creative properties, which is where he would have gone to attempt to license the Gargoyles Property. *See* Aff. of Pellegrino ¶ 6; Pellegrino Dep. Tr. at 53–57; *see also id.* at 97–98. Plaintiff submits no evidence to contradict this account. Similarly, Krisel has denied having met Pellegrino at any toy fair at any time. *See* Krisel Dep. Tr. at 18; *see also id.* at 11–12. Weisman has denied either having heard of Pellegrino prior to the present suit, *see* Aff. of Weisman ¶ 5, or having been exposed "to anything relating to gargoyles or any related characters or ideas at any Toy Fair," Weisman Dep. Tr. at 45.

In the face of these denials, and in light of the purpose of the Toy Fair as a marketing forum for toy manufacturers, the possibility that Pellegrino might have delivered the Gargoyles Property to Disney personnel attending the 1992 Toy Fair is simply too speculative to give rise to a reasonable possibility of access. *See Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1249–52 (11th Cir.1999) (insufficient evidence of access where plaintiff established only that intermediaries and defendant were in same city during 1993 Miami Film Festival); *Polsby v. St. Martin's Press, Inc.,* No. 97 Civ. 690, 1999 WL 225536, at *3 (S.D.N.Y. Apr. 19, 1999); *Palmieri v. Estefan,* No. 91 Civ. 3098, 1995 WL 331719, at *1 (S.D.N.Y. June 5, 1995), *appeal denied sub nom. Palmieri v. Defaria,* 88 F.3d 136 (2d Cir.1996); *Sylvestre v. Oswald,* No. 91 Civ. 5060, 1993 WL 179101, at *4 (S.D.N.Y. May 18, 1993).

Tomasini also attempts to establish access by proffering evidence that (a) Pellegrino acted as an agent for a property developed by a Disney licensee just after Pellegrino left Disney in 1986, *see* Pellegrino Dep. Tr. at 31–32, and (b) in 1999 the same firm employed both Pellegrino and Daniel J. Heffner, a Disney consultant, *see* Aff. of Person Ex. I, J. But these connections are wholly indirect and evidence no

continued contact between Pellegrino and Disney personnel during the years prior to this suit. Indeed, the few direct contacts Tomasini has established between Pellegrino and Disney after his 1986 departure are entirely unrelated to his business in marketing entertainment properties, *see* Pellegrino Dep. Tr. at 61, 104, 107; Krisel Dep. Tr. at 19–20, 28–29. *Compare Towler,* 76 F.3d at 582–83 (insufficient evidence of access where defendant had worked for intermediary's predecessor years earlier), *and Ferguson v. National Broad. Co.,* 584 F.2d 111, 113 (5th Cir.1978) (insufficient evidence where artist testified that any contacts with intermediary were unrelated to plaintiff or her work), *and McGaughey v. Twentieth Century Fox Film Corp.,* 12 F.3d 62, 64–65 (5th Cir.1994) (following *Ferguson* ), *with Gaste,* 863 F.2d at 1066–67 (sufficient evidence of access where contract linked defendant artist to publisher owned by intermediary), *and Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1062 (9th Cir.1981) (finding of no access erroneous where defendant did business with plaintiff's manufacturer), *and De Acosta,* 146 F.2d at 410 (affirming injunction where defendant had consulted directly with intermediary), *and Hogan v. DC Comics,* 48 F.Supp.2d 298, 308 (S.D.N.Y. 1999) (sufficient evidence where plaintiff submitted work to defendants' editors).

Accordingly, Tomasini has failed to proffer "significant, affirmative and probative evidence" establishing a reasonable possibility of access, *Intersong–USA,* 757 F.Supp. at 281, but instead has relied on the unsubstantiated speculation that Pellegrino maintained his former contacts with Disney personnel and used those contacts to market Tomasini's Gargoyles Property to Disney. Indeed, plaintiff largely concedes his lack of evidence to support his allegations. *See* Tomasini Dep. Tr. at 11–15, 18–19, 21–22, 31–32, 39–40, 42–44, 47, 50–53, 58–59, 64–65, 67, 325–35, 371–73. However, "an inference of access based on a third party's possession of the plaintiff's work requires 'more than a mere allegation that someone known to the defendant

possessed the work in question.'" *Herzog,* 193 F.3d at 1252 (quoting *Palmieri,* 1995 WL 331719, at *1); *see also Favia,* 1996 WL 194306, at *3.

In sum, Tomasini "has offered nothing more than conjecture and speculation as evidence of the defendants' (or the artists') access to the work, which fails to establish an essential element of [his] claim of copyright infringement." *Tuff 'N' Rumble Management, Inc.,* 1997 WL 158364, at *4.

### CONCLUSION

Accordingly, for the reasons set forth above, Disney's motion for summary judgment is granted and the amended complaint should be dismissed with prejudice.